Donna ANDERSON, Plaintiff,

v.

NASSAU COUNTY DEPARTMENT OF CORRECTIONS, Lieutenant Peter Dudek, in his individual and official capacities, Undersheriff Maguire, in his individual and official capacities, and Sheriff Edward Reilly, Defendants.

No. 04–CV–0650 (ADS)(WDW).

United States District Court,
E.D. New York.

July 6, 2005.

Leeds Morelli & Brown, P.C., Carle Place, NY (Rick Ostrove, of Counsel), for Plaintiff.

Lorna B. Goodman, Nassau County Attorney, by Deputy County Attorney Lark Teitler, Mineola, NY, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This action arises out of allegations by Donna Anderson ("Anderson" or the "Plaintiff") that the Nassau County Department of Corrections (the "Department of Corrections") and certain individuals involved with the Department of Corrections' Medical Investigation Unit ("M.I.U.") (collectively, the "Defendants") unlawfully denied her disability benefits in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the New York State Human Rights Law, § 290 *et seq.* Pending before the Court is a motion by the Defendants to disqualify the law firm of

Leeds Morelli & Brown ("Leeds") from its representation of the Plaintiff.

## I. BACKGROUND

On June 7, 2004, Anderson, represented by Rick Ostrove, Esq. of Leeds, commenced this action seeking monetary relief for the alleged denial of disability benefits and the alleged discrimination in the determination of such benefits. On October 19, 2004, Mary Washington ("Washington") commenced a separate action against the County of Nassau, the Nassau County Sheriff's Department and certain individuals affiliated with the Department of Corrections, including Anderson. *See Washington v. Nassau County, et al.,* No. 04 Civ. 4544 (E.D.N.Y.). In that action, Washington, represented by Robert J. Valli, Esq., of Leeds, alleged discrimination with regard to the denial of disability benefits during the time period that Anderson was the Commanding Officer of the M.I.U. (the "Washington Action"). The Washington Action is assigned to United States District Judge Thomas C. Platt.

On or about November 12, 2004, after the complaint in the Washington Action was served, the Defendants became aware of and informed Valli of the conflict of interest, namely the then-concurrent representation of Anderson as a plaintiff in this action and its representation of Washington in another action in which Anderson is a Defendant. According to a "Certification" filed in the Washington Action, Valli stated:

Upon learning of the conflict, I spoke with Mr. Rick Ostrove of my office, who handles most of the individual litigation cases at the firm. He confirmed for me that the firm did indeed represent Ms. Anderson. I informed him of the situation and he and I agreed that there was

a conflict with our continued representation of Ms. Washington.

Certification ¶ 17.

In a letter to the Court dated November 29, 2004, the Defendants requested permission to file a motion to disqualify Leeds from representing Anderson in the instant action. The proposed motion was based on the obvious conflict of interest arising out of Leeds' representation of Anderson as a plaintiff in this action and her being named as a defendant in the Washington Action. By letter to the Court dated December 6, 2004, Leeds proposed to remedy the situation by: (1) removing Anderson as a defendant in the Washington Action, (2) have Anderson and Washington each sign waivers indicating that they waive any conflict that might exist; and (3) ensure that the two matters continue to be handled by different attorneys within their office. In December 2004, Leeds obtained affidavits from Washington and Valli stating that Washington "would rather remove Ms. Anderson as a defendant than have [Leeds] removed as her counsel." Valli Certification at ¶ 20. Also in December 2004, Leeds obtained a sworn "Waiver of Conflict of Interest" from Anderson.

On February 2, 2005, the Defendants filed the instant motion pursuant to Canons 5 and 9 of the Model Code of Professional Conduct ("MCPR") and Disciplinary Rule ("DR") 5–105 of the Code of Professional Responsibility to disqualify Leeds from representing Anderson. On this same date, the defendants in the Washington Action filed a similar motion to disqualify Leeds from representing Washington. On April 8, 2005, Judge Platt granted the motion to disqualify Leeds from representing Washington on the basis that the prejudice caused by Leeds' concurrent adverse representation of Anderson and Washington could not be cured, stating that "the Court feels there is no way around the issue and new counsel should be retained."

## II. DISCUSSION

### A. The Applicable Law

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir.2005) (citing *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979)). In exercising this power, the Court must "attempt[ ] to balance a client's right freely to choose his counsel against the need to maintain the highest standard of the profession." *Hempstead Video, Inc.*, 409 F.3d at 132 (internal quotations and citations omitted).

In the Eastern District, ethical standards are governed by the New York State Lawyer's Code of Professional Responsibility. *See* Local Civil Rule 1.3. Canon 5 of this Code states that "[a] lawyer should exercise independent professional judgment on behalf of a client." Canon 9 requires that "[a] lawyer should avoid even the appearance of professional impropriety." Similarly, DR 5–105 provides that:

(A) A lawyer shall decline proffered employment if the exercise of [the lawyer's] independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve [the lawyer] in representing differing interests, except to the extent permitted under DR 5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by [the lawyer's] representation of another client, or if it would be

likely to involve [the lawyer] in representing differing interests, except to the extent permitted under DR 5–105(C). (C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that [the lawyer] can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of [the lawyer's] independent professional judgment on behalf of each.

N.Y. Comp.Codes R. & Regs. Tit. 22, § 1200.24.

■ Thus, " '[a]s a matter of professional responsibility, an attorney owes a duty of loyalty to his client ... not to divulge confidential communications ... and *not to accept representation of a person whose interests are opposed to the client.*' " *Ehrich v. Binghamton City Sch. Dist.*, 210 F.R.D. 17, 23 (N.D.N.Y.2002) (emphasis added) (quoting *In re Agent Orange Product Liability Litigation*, 800 F.2d 14, 17 (2d Cir.1986)). However, "not every violation of a disciplinary rule will necessarily lead to disqualification," *Hempstead Video, Inc.*, 409 F.3d at 133. Disqualification is warranted only where "an attorney's conduct tends to taint the underlying trial." *Nyquist*, 590 F.2d at 1246; *see also Ehrich*, 210 F.R.D. at 25. This "risk of taint is encountered when an attorney who represents one client in a suit against another client, in violation of Canon 5, or might benefit a client in a lawsuit by using confidential information about an adverse party obtained through prior representation of that party, in violation of Canon 4." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir.1981).

Whether or not disqualification is warranted is subject to the court's discretion. *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir.1990). In that regard, given the "immediate adverse effect on the client by separating him from counsel of his choice, and that disqualification motions are often interposed for tactical reasons, and inevitably cause delay," *Nyquist*, 590 F.2d at 1246, the Court must demonstrate reluctance in granting motions to disqualify counsel. *See, e. g., W.T. Grant Co. v. Haines*, 531 F.2d 671 (2d Cir.1976); *see also Blue Planet Software, Inc. v. Games Int'l., LLC*, 331 F.Supp.2d 273 (S.D.N.Y.2004). As the Second Circuit has advised:

> when dealing with ethical principles, ... we cannot paint with broad strokes. The lines are fine and must be so marked. Guideposts can be established when virgin ground is being explored, and the conclusion in a particular case can be reached only after painstaking analysis of the facts and precise application of precedent.

*Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 227 (2d Cir.1977) (quoting *United States v. Standard Oil Co.*, 136 F.Supp. 345, 367 (S.D.N.Y.1955)).

■ In the context of a conflict of interest arising out of dual representation of clients, courts in the Second Circuit apply one of two distinct rules with respect to disqualification. The more stringent of the two, known as the "per se rule," pertains to situations involving the continuous, simultaneous and/or concurrent representation of clients. *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir. 1976) ("Cinema 5"). The second rule, requiring the courts to apply a "substantial relationship" test, pertains in two situations: (1) when disqualification concerns a former client; and (2) for cases of vicarious or attenuated representation. *Id.; see also Hempstead Video*, 409 F.3d at 130. Unlike the substantial relationship test which purpose is to "prevent the possibility that the former clients confidences will be used to his [or her] disadvantage," *Eh-*

*rich,* 210 F.R.D. at 24, the per se test mandates that adverse representation of a current client is in and of itself improper. Nevertheless, the attorney sought to be disqualified may rebut this presumption by demonstrating "that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of representation." *Hempstead Video, Inc.,* 409 F.3d at 133 (emphasis in original) (internal quotations and citations omitted).

In order to determine which of the two tests to apply, the status of the relationship is assessed at the time that the conflict arises, not at the time that the motion to disqualify is presented to the court. *Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 435 F.Supp. 84, 95 (S.D.N.Y.), *aff'd in part, rev'd in part on other grounds,* 567 F.2d 225 (2d Cir.1977); *see also Ehrich,* 210 F.R.D. at 26 ("The per se rule applies if an attorney simultaneously represents clients with differing interests even though the representation ceases prior to the filing of the disqualification motion."). Otherwise, the subject attorney or law firm could easily transform the relationship from "continuing" to "former" by abandoning one of her clients, thereby securing application of the more lenient "substantial relationship" test. *Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 435 F.Supp. at 95.

## B. Analysis

The threshold question for the Court in determining which of the above mentioned tests to apply is whether the adverse relationship is concurrent or successive.

Here, the Anderson complaint was filed on June 7, 2004, and the Washington complaint was filed on October 19, 2004. It is undisputed that Leeds' representation of both Anderson and Washington was concurrent from on or about October 19, 2004 until April 8, 2005, the date that Judge Platt disqualified Leeds from representing Washington in the Washington Action. It is further undisputed that Leeds' concurrent adverse representation created a conflict of interest. *See* Valli Certification dated December 22, 2004 at ¶ 17, stating that Ostrove agreed that "there was a conflict with [their] continued representation of Ms. Washington." Because the status of the relationship is assessed at the time that the conflict arises, the Court finds that the then-concurrent representation of Anderson and Washington, in two cases in which Leeds was representing and suing Anderson at the same time, is prima facie improper. *See Carro, Spanbock, Kaster & Cuiffo v. Rinzler,* No. 88 Civ. 5280, 1992 WL 196758, at * 3 (S.D.N.Y. Aug.6, 1992) ("If a firm represents a client in the tradition sense, then it is prima facie improper for that firm to concurrently represent another client in a suit against the original client."). As explained in more detail below, Leeds must be disqualified unless it is able to demonstrate that there has been a full disclosure of the conflict to Anderson and that she has effectively waived this conflict. *See* DR 5–105.

### 1. Application of the "Per Se" Test

Pursuant to the Code of Professional Responsibility, a lawyer's duty to his client is that of a fiduciary or trustee who owes his client "undivided loyalty." *Cinema 5,* 528 F.2d at 1386–87. Thus, as stated above, "where the [attorney-client] relationship is a continuing one, adverse representation is prima facie improper." *Id.* (citing *Matter of Kelly,* 23 N.Y.2d 368, 376, 296 N.Y.S.2d 937, 244 N.E.2d 456 (1968) ("[W]ith rare and conditional exceptions, the lawyer may not place himself in a position where a conflicting interest may, even inadvertently affect or give the appearance of affecting, the obligations of the professional relationship")); *Hempstead Video, Inc.,* 409 F.3d at 133. As the Second Circuit stated:

Putting it as mildly as we can, we think it would be questionable conduct for an attorney to participate in any lawsuit against his own client without the knowledge and consent of all concerned.

*Cinema 5 Ltd.* at 1386; *British Airways, PLC v. Port Authority of New York,* 862 F.Supp. 889, 899 (E.D.N.Y.1994) ("Because the act of suing one's client is a dramatic form of disloyalty, disqualification is appropriate."); *see also Carro, Spanbock, Kaster & Cuiffo,* 1992 WL 196758, at * 5 ("[I]t is questionable conduct for an attorney to participate in any lawsuit against his own client without the knowledge and consent of all concerned.").

In *Cinema 5,* the Second Circuit upheld the disqualification of the plaintiff's counsel, who divided his time between a New York City law firm and a Buffalo law firm. *Id.* at 1384. The basis for this disqualification was that the Buffalo law firm was simultaneously representing Cinerama, Inc., the defendant in *Cinema 5,* in an antitrust suit brought against it by theater operators. *Id.* at 1385. The Court in *Cinema 5* held that the plaintiff's counsel failed to meet its heavy burden and observed that "there is at least the appearance of impropriety where half [plaintiff's counsel's] time is spent with partners who are defending Cinerama in multi-million dollar litigation, while the other half is spent with partners who are suing Cinerama in a lawsuit of equal substance." *Id.*

■ Here, Leeds asserts that the Defendants' motion to disqualify is moot because its disqualification from the Washington Action vitiates any conflict and the possibility of prejudice. Conversely, the Department of Corrections contends that an incurable prejudice exists and that the damage already done by Leeds' concurrent adverse representation of Washington and Anderson, namely the use of certain information by Leeds in the Washington Action that was acquired from this case, can only be cured by disqualification in the instant case. The Court finds that the issue is not the effect of the disqualification of Leeds from the Washington Action or whether confidences learned from Anderson were used in the Washington Action, but rather whether Leeds' continued representation of Anderson will taint this case. *Hempstead Video, Inc.,* 409 F.3d at 133; *Bottaro v. Hatton Assocs.,* 680 F.2d 895, 896 (1982) (citing *Nyquist,* 590 F.2d at 1246).

As indicated above, the then-concurrent adverse representation was prima facie improper and the resulting taint can only be removed by full disclosure and consent of the client *prior* to commencing the adverse representation:

> Attorneys are under an ethical obligation to disclose to their clients, at the earliest possible time, any conflicting interests that might cloud their representation. Disclosure alone is not enough. The lawyer may not act for the client unless the client has given his informed consent to further representation.

*Carro, Spanbock, Kaster & Cuiffo,* 1992 WL 196758, at * 6 (quoting *People v. Gomberg,* 38 N.Y.2d 307, 342 N.E.2d 550, 379 N.Y.S.2d 769, 775 (1975)). To be effective, "full disclosure, by definition, requires an act on the part of the attorney to inform the client not only of any potential conflict but also of the possible effect of such representation on the exercise on independent professional judgment on behalf of the client." *Id.*

On December 9, 2004, nearly three months after the Washington Action was commenced, Anderson signed a "Waiver of Conflict of Interest." However, such consent must have been obtained prior to Leeds' undertaking representation of adverse interests, not in response to a motion to disqualify. *See Discotrade Ltd. v. Wyeth–Ayerst Intern., Inc.,* 200 F.Supp.2d 355, 360 (S.D.N.Y.2002) (Disqualifying

counsel because, among other reasons, "it is clear from the documentary record that [counsel] knew it had not secured an effective waiver *before* filing this lawsuit." (emphasis added)); *see also Stratagem Development Corp. v. Heron Int'l, N.V.,* 756 F.Supp. 789, 794 (S.D.N.Y.1991) (holding that consent must be obtained from current client prior to undertaking representation adverse to that of its current client).

Furthermore, the "waivers" obtained from Anderson and Washington, obtained after the discovery of Leeds' concurrent adverse representation, can only be viewed to support the appearance of impropriety and the possible diminution in the vigor of representation that the Second Circuit has sought to prevent in granting motions to disqualify counsel. For example, in the affidavit accompanying her waiver, Washington indicated that she agreed to waive any conflict and to withdraw any claims against Anderson because she didn't want to have Leeds removed as her counsel. With respect to the Washington Action, the Court recalls that Anderson was the commanding officer of the M.I.U.; and Washington's complaint alleges that:

¶ 11. Defendant Donna Anderson, was and is a Sergeant at the Sheriff's Department—Medical Investigations Unit, and therefore, was and is responsible for its maintenance and operation, including, but not limited to employment related issues. Additionally, Defendant Anderson is a policy maker for the Department, charged with the responsibility of insuring that employees are not subjected to retaliation or harassment. She is also responsible for properly training and supervising employees with respect to employment issues.

¶ 17. On May 18, 2001, Donna Anderson, an Investigator Sergeant in the Medical Investigations unit, informed [Washington] that no decision

had yet been made to either grant or deny [Washington] 207c benefits. As a result Plaintiff would be charged Sick Worker's Compensation time until a determination had been made.

¶ 53. In or about July 2004, during an investigation into her alleged theft of overtime, while defendant Donna Anderson was permitted to take a leave of absence. Upon information and belief the leave of absence was granted because Anderson who was suffering from an anxiety disorder brought on from the stress of her employment with Defendants is white.

In the Court's view, the withdrawal of ostensibly valid claims against an alleged viable defendant in order to maintain chosen counsel is inconsistent with the mandates of the Code of Professional Conduct.

In evaluating "whether the practices and structures in place are sufficient to avoid disqualifying taint," *Hempstead Video, Inc.,* 409 F.3d at 133, the Court also finds that Leeds' efforts to separate the handling of the Washington Action and Anderson Action is inadequate. Not only has Leeds failed to set forth detailed measures taken to separate the respective case files, but the Court's docketing system indicates that the same attorney filed documents in both cases. Regardless of Leeds' explanation with regard to this filing issue, in the Court's view, in a relatively small law firm where most of the employment law litigation is handled by two attorneys, there is not an effective "wall" within Leeds to ensure that access to the files relating to this case is sufficiently limited.

Accordingly, the Court concludes that Leeds has not met its heavy burden to establish that there is no actual or apparent conflict of interest in its continued representation of Anderson. The Defendants' motion to disqualify Leeds from its

representation of Anderson in this case is granted.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the motion by the Defendants to disqualify Leeds as counsel for the Plaintiff Anderson is **GRANTED;** and it is further

**ORDERED,** that the Plaintiff must retain new counsel or advise the Court that she is proceeding *pro se* within 45 days from the date of this order; and it is further

**ORDERED,** that all discovery and motion practice in this case is stayed for 45 days from the date of this order.

**SO ORDERED.**