IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | |
| | ) | No. 30851-1-III |
| RICHARD TODD WIXOM, | ) | |
| | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | PUBLISHED OPINION |
| and | ) | |
| | ) | |
| LINDA BUCHHOLZ WIXOM, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, J. — As the noblest calling, the legal profession demands the highest ethical behavior of its members. A supreme commandment of attorney ethics is undivided loyalty to a client and the shunning of any self-interest that would conflict with the interests of the client. Because appellant's counsel violates this commandment, we take the unusual step of disqualifying him, on our own initiative, from representing appellant.

The trial court ruled that Richard (Rick) Wixom and Robert Caruso, his attorney, violated CR 11 and held them jointly liable for $55,000 in attorney fees and costs

No. 30851-1-III
*In re Marriage of Wixom*

incurred by Wixom's former wife during a proceeding to modify residential placement of the couple's children. Both Wixom and Caruso appeal, challenging the sanctions and contesting the findings supporting the court's imposition of terms. Caruso further argues that, if this court upholds the sanctions, his client alone should bear the costs. Because this creates a conflict of interest, we disqualify Caruso from further representation of Rick Wixom in this appeal. We also impose limits upon Caruso representing himself.

FACTS

The important facts, upon which we disqualify attorney Robert Caruso, are brief. On appeal, Caruso forwards an argument beneficial to himself and harmful to his client, Rick Wixom. Nevertheless, we provide additional facts to show the background as to how Caruso arrived at forwarding this argument. In supplying this background, we do not seek to prejudge whether sanctions awarded by the trial court against Robert Caruso and Rick Wixom should be affirmed on appeal. Instead, we seek to show the basis upon which the trial court assessed sanctions against both Caruso and Wixom, thereby creating a conflict between attorney and client. Therefore, we will sometimes couch the facts in terms of the respective parties' testimony and findings of fact entered by the trial court.

Rick and Linda Wixom wed in 1991. The couple bore two sons, A.W., age 21; and J.W., age 14; and one daughter, T.W., age 19. Rick and Linda Wixom separated in August 2007.

Linda Wixom holds a graduate degree in pharmacology and is a Washington State

2

licensed pharmacist. From April to September 2006, Linda diverted hydrocodone and alprazolam from her place of employment, a Rite Aid store in Spokane. She accomplished the diversion by forging the name of her physician brother to prescriptions for her husband, Rick Wixom, and by overfilling Rick's prescriptions for hydrocodone. Linda took some of the pills. In September 2006, Rite Aid fired Linda from her job for stealing prescription drugs. In April 2007, the State of Washington Department of Health Board of Pharmacy (Board of Pharmacy) brought disciplinary charges against Linda.

## PROCEEDINGS

In September 2007, Rick Wixom petitioned for divorce from Linda. Shortly thereafter Linda voluntarily entered the Washington Recovery Assistance Program for Pharmacists as part of an agreement with the Board of Pharmacy. Linda Wixom agreed to probation for five years with the Board of Pharmacy, and the Board dismissed charges against her in January 2008. As part of probation, Linda underwent random urinalysis testing.

All three children resided with Linda Wixom through October 2008. The oldest child, A.W., then went to live with his father. In October 2008, Rick Wixom began to date Angel. We do not know Angel's last name before her marriage to Rick Wixom.

In January 2009, the federal government indicted Linda Wixom on three counts of obtaining controlled substances by fraud. In February 2009, she pled guilty and entered probation for five years. In September 2009, Linda withdrew her guilty plea, and the

court accepted the withdrawal because she had not been advised that she could not work as a pharmacist with the conviction. In November 2009, the United States and Linda entered into a deferred prosecution agreement. Under the agreement, the government promised to dismiss charges against Linda, if she complied with 20 conditions during the next five years.

The trial court entered a decree of dissolution and parenting plan on March 3, 2009, at a time when each child was under the age of majority. Rick received residential placement of A.W., and Linda received placement of the other two children. During the time that he resided with his father, A.W. hated his mother Linda based upon his father's stories of the mother's stealing and taking drugs.

In October 2009, Rick Wixom married Angel.

A.W. and T.W.'s respective relationships with their father and his new wife Angel significantly deteriorated during 2010. The last time that T.W. and A.W saw their father was on December 24, 2010. A.W. moved to his mother's home after either his father evicted him, A.W. left in anger, or both. Rick Wixom claimed that A.W. refused to obey rules, took unlawful drugs, and threatened the safety of Rick's new wife.

Because of the change in A.W.'s residential location, Linda Wixom petitioned the court, on February 8, 2011, to modify the parenting plan. In addition to seeking recognition of A.W. residing with her, Linda, in her petition and in recognition of T.W.'s refusal to visit with her father, sought limitation of T.W.'s visits with Rick Wixom.

On March 23, 2011, Rick counter-petitioned for a modification of the parenting plan. Rick asked that the couple's youngest child, J.W., be placed in his home. Rick alleged that J.W. should be away from his two older siblings, because of their bad influence. Rick further alleged that Linda could not supervise T.W. and J.W. because of Linda's untreated mental illness and continuing abuse of drugs. He claimed that Linda engaged in ongoing criminal behavior.

On April 22, 2011, the trial court found adequate cause to proceed to a trial on Rick Wixom's petition for modification to gain custody of J.W. and Linda's petition to limit visitation between T.W. and Rick. The court appointed experienced guardian ad litem (GAL), Heather Lund, to address the parenting and home environment of both father and mother. By the time of the April 22 hearing, A.W. had reached the age of 18 and thus the court no longer held jurisdiction over the placement of A.W. Linda's petition for modification with regard to A.W. was rendered moot.

Through July 11, 2011, attorney Connie Shields represented Rick Wixom. On July 11, Robert Caruso substituted as counsel for Richard. The trial judge considered this change in attorneys to be significant.

A traumatic event occurred on the evening of July 29, 2011, at a time that the parties were to change care of J.W. Rick Wixom exercised visitation with J.W. from July 23 through July 29. Linda Wixom was to retrieve J.W. from Rick's home on Friday, July 29, at 5:00 p.m., but neither J.W. nor Rick was present when she arrived around 5:45 p.m.

5

Linda's work ended at 5:00 p.m. and she warned Rick that she may be late to retrieve J.W. because of construction on Interstate 90. Rick blamed his failure to surrender J.W. to Linda that Friday evening on Linda's tardiness in retrieving J.W. and Linda's "controlling," "manipulative," and "deceitful" behavior. In response to an emergency motion by Linda to regain the presence of J.W., Rick averred that Linda was "impaired by the use of illegally obtained prescription narcotics," such that "she abandons the children and is only concerned about herself and what is convenient to her and her life." Clerk's Papers (CP) at 284. Angel Wixom declared that she "perceived" J.W. to "suffer from severe abandonment and guilt issues," resulting from Linda's "lack of sensitivity and failure to live up to her commitments of time to receive (pick-up) J.W. on time." CP at 304.

Guardian ad litem, Heather Lund, scheduled a home review of Linda's home for Saturday, July 30, but needed to reschedule because Linda did not gain care of J.W. on July 29. Lund received a phone message from attorney Robert Caruso, at 4:15 p.m., on July 29, stating that J.W. would not be at the home visit the following day. She did not hear the message until Monday, August 1.

The trial court held Rick Wixom in contempt for failing to return J.W. Rick then began to blame the court for embarrassing and humiliating him. The ruling and other rulings by the trial court led to a series of motions by Rick Wixom, including motions for

reconsideration, a motion for declaratory judgment, and a motion for removal of a court commissioner from hearing further motions.

On September 8, 2011, guardian ad litem, Heather Lund, issued her report. The guardian expressed concern that disparagement of Linda Wixom by Rick and Angel Wixom posed serious damage to all children's psychological development. Angel and Rick Wixom called Linda a drug addict and "bitch" in the presence of T.W. CP at 1109. The guardian ad litem found that Angel and Rick Wixom routinely violated a court order directing that J.W. have telephone contact with his mother each evening while J.W. visited Richard.

In her report, Heather Lund recommended a modification of the parenting plan to limit T.W.'s contact with her father. According to Lund, Rick Wixom's conduct adversely affected T.W.'s best interests because of the absence of emotional ties between them. Lund further concluded that Linda Wixom should retain custody of J.W., but that visitation with Rick Wixom be extended while Rick was home, but curtailed if only Angel Wixom was at home.

After the filing of the guardian ad litem report, Rick Wixom's counsel, Robert Caruso, requested that Heather Lund conduct an investigation into the criminal history of and drug abuse by Linda Wixom. Caruso also instructed Lund to have no further contact with his client.

Rick Wixom's and Linda Wixom's cross-petitions to modify the parenting plan proceeded to a seven day trial, in November and December 2011. Guardian ad litem, Heather Lund, spent three trial days under questioning by both attorneys.

Angel and Rick Wixom testified at trial that Linda Wixom emotionally traumatizes and alienates J.W., and Linda withholds love and affection from all three children. Heather Lund testified none of these claims were true.

During trial, the Board of Pharmacy substance abuse recovery program manager testified. The manager testified that Linda Wixom is in full compliance of the program. Linda routinely undergoes random urinalysis tests and always passes. Linda Wixom's federal probation officer testified that Linda is in compliance with her probation requirements.

Before trial, Rick Wixom submitted a declaration, in which he stated Linda Wixom's pharmacist's license was revoked. In his proposed parenting plan, Rick claimed Linda was pending incarceration for violation of federal probation. At trial, Rick admitted he did not know whether the license was revoked. He admitted he knew of no violations of probation.

In the afternoon of the last day of trial, Rick Wixom informed the court he was no longer contesting Linda Wixom's petition to limit visitation between he and T.W.

After trial, the trial court entered 195 findings of fact. The findings included:

72. The Court finds there has been a long-term barrage of derogatory comments made about Linda Wixom and Bob McGuinness and about [A.W.] and [T.W.] to [J.W.] by Richard and Angel Wixom. That conflict has been abusive and creates a danger of serious damage to the Wixom children's psychological development. It has also resulted in the substantial impairment of the emotional ties between [T.W.] and both Richard and Angel Wixom. It represents a detriment to [J.W.'s] emotional and psychological wellbeing in Richard Wixom's home. The benefits of suspending [T.W.'s] contact outweigh the harm likely to be caused by disrupting those visits.

73. Richard and Angel Wixom's opinions that Linda Wixom has used or abused nonprescription drugs since the time of the final parenting plan are inconsistent with the overwhelming evidence presented in this case.

74. The fact that Mr. Wixom has failed to exercise any residential time with [T.W.] and does not seek residential time with [T.W.] as recently as the last day of trial is compelling evidence to the Court that either Mr. Wixom does not believe there is a detriment to the children's environment in their mother's home, or if he does truly believe Linda Wixom's environment is detrimental, he is willing to subject his older two children to that detrimental environment.

. . . .

96. All of the other allegations by Richard and Angel Wixom, either individually or cumulatively, come nowhere close to the type of detriment that is necessary in order to establish a basis for a major modification.

97. This case was thoroughly investigated by one of Spokane County's most experienced Guardian ad Litems. She wrote two reports that totaled over 70 pages. She testified for three court days on the stand. She was not able to find any evidence of detriment in Linda Wixom's home.

. . . .

99. There is something toxic going on in Richard Wixom's home that has caused both [A.W.] and [T.W.] to flee from that environment. The Court does not normally see the type of total decay of a relationship between children and their parents as exists here unless there is something unhealthy in that environment.

. . . .

9

104. This Court concludes the reason for the conflict does not lie with [T.W.] and [A.W.] but instead with Richard and Angel Wixom and their home environment.

. . . .

116. Richard Wixom's request for attorney fees is based upon the following factors from the Joint Trial Management Report: bad faith dealings by Respondent, judgments obtained under fraudulent pretenses, violation of US and Washington State Constitutions due process rights, order of commissioner fraudulently obtained, dirty hands of Respondent in obtaining money judgments, and Respondent's perjury and/or misstatements to the Court as evidence of her fraud, deceptions, and sneakiness, and lack of candor to the Court as a way to foster her goals at any cost.

117. Linda Wixom requests attorney fees because she asserts Richard Wixom and his attorney have engaged in a course of conduct intended to harass, cause unnecessary delay, or needlessly increase the cost of litigation by raising issues that preexisted the Final Parenting Plan and making arguments and assertions that are not well grounded in fact or proffered in good faith.

118. Both parties allege intransigence by the other as a basis for attorney fees.

. . . .

122. Richard Wixom expended a great deal of trial time on allegations that Linda Wixom committed perjury by intentionally denying she had ever been charged or convicted of a federal crime, her failure to disclose out of state travel to her probation officer, the possibility that she may have provided fraudulent urine samples for purposes of passing UA's, the fact that she was inconsistent in her testimony about whether she arrived at 5:40 pm or 5:45 pm on July 29, 2011, the fact she only gave one-day notice she would not make the exchange on July 29, 2011 by 5:00 pm, her alleged fraudulent testimony to the Court that a phone call on August 2nd was made at 6:00 pm and other alleged misstatements made by her or on her behalf during previous hearings.

. . . .

124. Linda Wixom further cites the fact that Richard Wixom asserted in his joint trial management report that he would call 40 witnesses, forcing her to prepare for crossexamination of those witnesses. Linda

10

Wixom filed a Motion during trial for that list to be narrowed down. Only 2 of the 40 listed witnesses were ever called by Richard Wixom.

. . . .

133. The Court is satisfied Linda Wixom did not intend to deceive anyone when she denied being charged with a crime and corrected it when she signed her deposition. This Court gave Mr. Caruso greater latitude to impeach Linda Wixom as a result of that misstatement. However, that fact could have been established very quickly, especially as it was conceded before trial began. Yet it was an issue brought up by Richard Wixom and Mr. Caruso over and over throughout the trial.

. . . .

139. Richard Wixom and Mr. Caruso asserted a series of other statements they considered perjurious, deceptive, or sneaky. These were exhaustively covered during the course of trial. Some of these alleged statements were not even made by Linda Wixom so they could not amount to perjury or fraud by her. The argument from Richard Wixom and Mr. Caruso is that they were made on her behalf by her attorney or by the GAL.

140. Mr. Caruso insinuated Ms. Lund was biased in favor of Linda Wixom when Ms. Lund used the word "we" when discussing a court appearance for an ex parte restraining order. . . .

141. There is absolutely no evidence to suggest Ms. Lund was biased towards or aligned with one side during this hearing or any other hearing.

. . . .

155. Linda Wixom's phone records show her first call to [J.W.] on August 2, 2011, was at 5:59 pm. She then called Richard Wixom at 6:00 pm.

156. Richard Wixom and Mr. Caruso argue the fact that she called [J.W.] at 5:59 pm and not 6:00 pm [is] another example of Linda Wixom's fraud, deception, sneakiness, and lack of candor as a way of fostering her goals at any cost.

157. To argue that testifying a phone call was made at 6:00 pm when in fact the telephone records show the call began at 5:59 pm is fraud is the most extremely unreasonable position the Court has witnessed taken by any attorney in any case in its courtroom.

158. The events of July 29, 2011 represent the clear dividing point in this case. Before that time Linda and Richard Wixom were able to reasonably resolve things regarding their children despite their

11

competing petitions for modification. Linda Wixom voluntarily allowed Richard Wixom additional summer time despite not receiving his proposed summer schedule by May 15th.

159. Prior to July 29, 2011 there had never been a contempt proceeding nor the type of litigation that occurred after July 31, 2011.

. . . .

163. There is one significant event that occurred shortly before this exchange that explains the chaos and dysfunction. Shortly before July 29, 2011, Richard Wixom's previous attorney withdrew and he retained Mr. Caruso. That day, that weekend, and virtually every part of this case became chaotic and dysfunctional from that point forward.

164. Mr. Caruso advised Mr. Wixom that he was running out of time to exercise his five weeks of summer time with [J.W.] before school started. Richard Wixom knew Linda Wixom was going to be late to pick up [J.W.] on July 29, 2011.

165. Mr. Caruso and Richard Wixom decided to take advantage of the fact that Linda Wixom would be late to pick up [J.W.].

166. Richard Wixom contacted his attorney at 4:00 pm on July 29, 2011.

167. Mr. Caruso called the GAL and left a message for her at 4:15 pm on July 29, 2011, that [J.W.] would probably not be at the home visit the following day because Mr. Caruso and Richard Wixom knew [J.W.] was not going to be delivered to Linda Wixom that evening.

. . . .

178. This was a calculated decision by Richard Wixom to sabotage the GAL's investigation, to keep [J.W.] for as much time as he could, and to begin engaging in a course of conduct that was intended to harass or increase the cost of this litigation. That course of conduct continued through trial.

. . . .

180. Richard Wixom and Mr. Caruso decided to raise every possible argument to support his modification, including alleging drug use when they had no evidence to support that assertion.

. . . .

182. This was an all-out war against Linda Wixom from that time through trial.

183. Richard Wixom and Mr. Caruso engaged in a course of conduct that was not in good faith beginning in late July 2011 and continued through trial.

184. Richard Wixom and Mr. Caruso pursued allegation and innuendos not well-grounded in fact. Instead these allegations and innuendos were interposed for the improper purpose of harassing and causing unnecessary and needless increase in the cost of litigation.

185. There has been an ongoing attempt by Richard Wixom and Mr. Caruso to harass, embarrass, threaten, and intimidate the GAL, the Court Commissioner, and Linda Wixom herself.

186. In the years the Court has been a judicial officer in Spokane County and including the nearly 30 years that the Court has worked around Spokane County Superior Court, the Court cannot recall a case so devoid of merit and so full of misdirection and meritless arguments.

. . . .

188. There is a basis for Linda Wixom to receive CR 11 sanctions and attorney's fees based upon intransigence against Richard Wixom and Mr. Caruso.

189. Richard Wixom has not seen [T.W.] since Christmas Eve 2010 when he returned her to Linda Wixom's care early.

190. It was unconscionable for Richard Wixom to wait until the afternoon of the last day of trial to disclose he was not requesting residential time with [T.W.] and that he agreed with the GAL's recommendations. He only did this when directly asked by the Court.

191. Had Richard Wixom or his attorney disclosed to the Court they were not contesting Linda Wixom's petition to modify the parenting plan regarding [T.W.], the Court would have simply granted Linda Wixom's petition based upon agreement of the parties.

192. Had Richard Wixom conceded Linda Wixom's petition before the end of trial, then Mr. Caruso would have begun his case for Richard Wixom's petition to modify first. Richard Wixom and Mr. Caruso could have used the first three trial days developing whatever evidence they might have had to support the alleged detriment in Linda Wixom's home.

193. Had Richard Wixom conceded Linda Wixom's petition before the end of trial, the GAL may not have spent three days on the stand since Richard Wixom likely would not have called her in his case-in-chief since he disagreed with most of her findings and recommendations.

194. Had Richard Wixom conceded Linda Wixom's petition before the end of trial, the Court likely would have dismissed Richard Wixom's petition at the conclusion of his case because the evidence he presented, even looked at in the light most favorable to him, likely

13

would not have risen to the level necessary to prevail on his petition to modify.

195. Linda Wixom spent tens of thousands of dollars to pursue her petition that was not contested and to defend a petition filed by Richard Wixom that is without merit.

CP at 1112-1124.

Based on the foregoing findings of fact, the trial court concluded that Robert Caruso abused his professional responsibilities. The trial court ordered Rick Wixom and Robert Caruso to pay 90 percent of the attorney fees incurred by Linda Wixom after July 30, 2011. The 10 percent reduction was based upon Linda's erroneous testimony that she had not been charged with a crime. After reviewing Linda Wixom's counsel's affidavit, the trial court awarded fees of $51,778.58 and costs of $3,949.84.

Robert Caruso and Rick Wixom appeal the sanctions. The notice of appeal signed by Caruso lists both Caruso and his client as parties to the appeal.

In the appeal brief, Robert Caruso argues that, if this court affirms the sanctions, Rick Wixom alone should bear the $55,000 in attorney fees and costs. Because Caruso sought, at least partially, to absolve himself from paying sanctions and, instead, requested to shift the entire cost of the sanctions to his client, this appellate court asked Caruso to address whether he should be removed as Wixom's attorney because of a conflict in interest. In his response to this court's request, Robert Caruso, without citation to authority, argued no conflict of interest exists. If one exists, Caruso asserted, his client made an informed decision to waive that conflict on May 16, 2014, after Caruso gave

14

him time to review the briefs and seek separate counsel. Caruso did not submit any

written waiver or an affidavit by Rick Wixom attesting to waiving any conflict.

## LAW AND ANALYSIS

Robert Caruso's conduct requesting that this court shift any sanctions solely to his

client raises a few questions. First, does the request create a conflict of interest? Second,

may Rick Wixom waive the conflict of interest, and, if so, what evidence of waiver is

required? Third, may this court, on its own initiative, remove Robert Caruso from

representing Rick Wixom? Fourth, does any conflict of interest preclude Robert Caruso

from representing himself in further proceedings?

### Conflict of Interest

RPC 1.7 prohibits a lawyer from representing a client if a concurrent conflict of

interest exists. A concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

RPC 1.7(a). A lawyer represents conflicting interests when, on behalf of one client, it is

the lawyer's duty to contend that which the lawyer's duty to another client requires him

or her to oppose. *In re Welfare of Schulz*, 17 Wn. App. 134, 142, 561 P.2d 1122 (1977).

Rules of professional conduct should be construed broadly to protect the public from attorney misconduct. *Eriks v. Denver*, 118 Wn.2d 451, 459, 824 P.2d 1207 (1992); *Gustafson v. City of Seattle*, 87 Wn. App. 298, 302-03, 941 P.2d 701 (1997). An attorney should resolve all doubts against undertaking a dual representation. *Eriks*, 118 Wn.2d at 460; *Gustafson*, 87 Wn. App. at 303.

Concurrent conflicts of interest can arise from the lawyer's own interests. RPC 1.7 cmt. 1. A conflict of interest exists when the interests of the attorney and the client are adverse. *State v. Roger I. Fualaau*, 155 Wn. App. 347, 362, 228 P.3d 771 (2010). "The lawyer's interest," within the context of RPC 1.7, denotes a financial or familial interest or an interest arising from the lawyer's exposure to culpability. *In Re Pers. Restraint of Stenson*, 142 Wn.2d 710, 740, 16 P.3d 1 (2001).

Robert Caruso contends no conflict exists because he has but one client, Rick Wixom. The record shows otherwise. Caruso has two clients: Rick Wixom and himself. The caption to his opening brief, reply brief, and brief on the subject of the conflict of interest confirms this. All captions read:

> Robert E. Caruso, WSBA # 29338
> CARUSO LAW OFFICES
> Attorneys for Appellant Richard T. Wixom and
> Appellant-Judgment Debtor Robert E. Caruso.

The signature page of each brief repeats Caruso's declaration that he represents both Rick Wixom and himself. Robert Caruso's argument in his opening brief also belies his

contention. In his appeal brief, he argues that, if this court confirms sanctions, only Rick Wixom should bear the responsibility.

Rick Wixom's interests rest in Rick Wixom's sharing payment of any sanctions. Therefore, Caruso's advocacy before this court is directly adverse to Rick Wixom's interests. In violation of RPC 1.7(a)(1), Caruso takes a position in favor of one client that injures another client. In violation of RPC 1.7(a)(2), Caruso's personal interests conflict with the interests of his client.

The trial court found that the litigation intransigence of Rick Wixom did not begin until Robert Caruso appeared on behalf of Wixom. Therefore, Wixom could argue that Caruso was the major cause of the bad faith litigation and he should share payment of sanctions. We do not expect Caruso to advise his client that the two should share responsibility. Independent counsel would be helpful to Rick Wixom.

Rick Wixom could even argue that any sanctions should be assessed solely upon Robert Caruso. Wixom could argue he relied upon Caruso to advise him on legitimate litigation tactics. Yet, Caruso is not forwarding this argument on behalf of Wixom. Caruso's professional judgment may be clouded by the imposition of sanctions against him, and independent judgment is essential to a lawyer's representation of a client. RPC 1.7 cmt. 1.

If attorney and client disagree about who is at fault and point their fingers at each other in response to a request for sanctions, the interests of the two are clearly adverse.

17

*Eastway Constr. Corp. v. City of N.Y.*, 637 F. Supp. 558, 570 (E.D.N.Y. 1986). The client, therefore, will need new counsel to represent him against his former counsel in the proceedings to determine fault. *Eastway Constr. Corp.*, 637 F. Supp. at 570 (citing William W. Schwarzer, *Sanctions Under the New Federal Rule 11*, 104 F.R.D. 181, 199 (1985)). Rick Wixom may not be pointing the finger at Robert Caruso because, not being schooled in the law, Wixom does not know to point the finger. But Caruso is pointing the finger at Wixom.

Another problem arises because of this appeal. This court could find the appeal frivolous and impose sanctions in favor of Linda Wixom. This court would then need to decide whether to impose sanctions upon Robert Caruso, Rick Wixom, or both. Wixom may have authorized an appeal only because Robert Caruso expressed an opinion that legitimate grounds existed for the appeal. Caruso's continued representation of Wixom could prevent Wixom from arguing that Caruso should be the principal, if not the sole, party upon whom we might impose sanctions on appeal.

Several cases are illustrative. In *Slane v. Rio Grande Water Conservation District*, 115 F.R.D. 61 (D. Colo. 1987), the defendant conservation district, after dismissal of plaintiffs' suit, filed a motion for attorney fees against plaintiffs and their counsel for filing a frivolous suit. The court agreed the suit was frivolous, and, before awarding an amount, the court recommended that plaintiffs' counsel withdraw from his representation of the plaintiffs and that he obtain counsel for himself. Counsel withdrew from

representation of the plaintiffs and obtained his own counsel. Eventually, the trial court imposed all sanctions upon counsel based upon evidence that the clients relied on their attorney in determining whether they had a basis for suit.

In *Anschutz Petroleum Marketing Corporation v. E.W. Saybolt & Co., Inc.*, 112 F.R.D. 355 (S.D.N.Y. 1986), the court granted plaintiff's motion to strike defendants' third-party complaint and granted plaintiff's motion for sanctions under Federal Rules of Civil Procedure Rule (FRCP) 11. The court imposed sanctions only upon defendants' counsel. The court further noted that, if counsel wished to shift some of the sanctions upon his clients, the client must be represented by separate counsel.

Robert Caruso contends that any potential conflict of interest may not materialize because (1) Linda Wixom may choose not to enforce the judgment against him, (2) this appellate court may agree that the trial court erred when it awarded any sanctions, or (3) he will be held liable anyway. Each argument is speculative. No principle of law excuses an attorney from a conflict with a client because a court may later issue a ruling that renders the conflict moot. Furthermore, Robert Caruso's speculation does not consider the possibility that sanctions should only be imposed upon him and he fails to advocate this possibility on behalf of his client, Rick Wixom.

We recognize that a potential for conflict is inherent in any sanctions motion that is directed against both a client and a lawyer. *See, e.g., Healey v. Chelsea Resources, Ltd.*, 947 F.2d 611, 623 (2nd Cir. 1991); *In re Ruben*, 825 F.2d 977, 985 (6th Cir. 1987).

19

We do not imply that an attorney must withdraw each time the opposing party targets a sanction motion against both him or her and the client, otherwise such sanction motions could be used as a tactic to harass the opposing party and lawyer. We hold that, if and when an attorney seeks to limit a sanction award against only his or her client, the attorney must withdraw from representing the client.

Waiver

Robert Caruso contends that Rick Wixom waived any potential conflict of interest. RPC 1.7(b) allows the client to waive a conflict of interest in limited circumstances. The rule reads:

> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law;
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> (4) each affected client gives informed consent, confirmed in writing (following authorization from the other client to make any required disclosures).

Robert Caruso contends Rick Wixom waived any conflict on May 16, 2014. Caruso produces no written waiver. We do not know if Caruso fully disclosed the ramifications of his adverse arguments to Wixom, before Wixom consented. We do not know if Robert Caruso discussed, with Rick Wixom, the possibility that Caruso alone might be held responsible or principally responsible for the sanctions. Regardless, we

hold that Wixom may not waive the conflict, because an actual conflict has now arisen in litigation.

Some conflicts are nonconsentable, meaning that the lawyer cannot properly ask for a waiver or provide representation on the basis of the client's consent. RPC 1.7 cmt. 14. RPC 1.7(b)(3) prohibits representation of opposing parties in the same litigation, regardless of the clients' consent. RPC 1.7 cmt. 23. It is axiomatic that an attorney cannot represent two clients whose interests are actually, as opposed to potentially, conflicting. *U.S. Fid. & Guar. Co. v. Louis A. Roser Co., Inc.*, 585 F.2d 932, 939 (8th Cir. 1978). If a lawyer accepts dual representation and the client's interests thereafter come into actual conflict, the lawyer must withdraw. *In re Disciplinary Proceedings Against Carpenter*, 160 Wn.2d 16, 28, 155 P.3d 937 (2007).

As described above, Robert Caruso represents Rick Wixom and himself before this court. Caruso asserts Wixom alone should bear the costs of any sanctions this court upholds. Caruso's assertion is active and directly adverse to the interests of Wixom. Caruso's personal interests and the alternative appeal strategy demonstrate his and his client's interests actually conflict. Therefore, Rick Wixom may not waive this conflict.

Even if Rick Wixom could consent to the conflict, Robert Caruso should have obtained the consent prior to arguing in his brief that Wixom should be the only person to pay sanctions. *Eriks*, 118 Wn.2d at 461. By Caruso's own admission, he did not obtain Wixom's consent until May 16, 2014, long after the conflict arose, and only after this

21

court raised the issue of disqualification. No waiver may be found if the waiver was not obtained until after the adverse representation was made, rather than prior to commencement of the adverse representation. *Anderson v. Nassau County Dep't of Corr.*, 376 F. Supp. 2d 294, 300 (E.D.N.Y. 2005); *Stratagem Dev. Corp. v. Heron Int'l, N.V.*, 756 F. Supp. 789, 794 (S.D.N.Y. 1991). Consent must be obtained prior to the attorney's undertaking representation of adverse interests, not in response to a motion to disqualify. *Discotrade Ltd. v. Wyeth-Ayerst Int'l, Inc.*, 200 F. Supp. 2d 355, 360 (S.D.N.Y. 2002). Prior consent is important because the client may deem himself without options once the conflict arises and the attorney may not fully explain the ramifications of the conflict because of personal interests.

Even if a client waives the conflict, a waiver of a conflict of interest does not necessarily cure a conflict and the court need not necessarily accept the waiver. *Wheat v. United States*, 486 U.S. 153, 162, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988); *State v. Rooks*, 130 Wn. App. 787, 799, 125 P.3d 192 (2005). Under such circumstances, the court can elect to exercise its supervisory authority over members of the bar to enforce the ethical standard requiring an attorney to decline multiple representations. *Wheat*, 486 U.S. at 162; *United States v. Dolan*, 570 F.2d 1177, 1184 (3d Cir. 1978); *Rooks*, 130 Wn. App. at 800.

Disqualification

RPC 1.16 requires withdrawal if the representation will result in violation of the

22

Rules of Professional Conduct or other law. *Rooks*, 130 Wn. App. at 798. The rule

reads, in part:

> DECLINING OR TERMINATING REPRESENTATION
> (a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall, notwithstanding RCW 2.44.040, withdraw from the representation of a client if:
> (1) the representation will result in violation of the Rules of Professional Conduct or other law.

"The rule is clear, '[i]f a lawyer accepts dual representation and the client's interests

thereafter come into actual conflict, the lawyer must withdraw.'" *In re Disciplinary

Proceedings Against Carpenter*, 160 Wn.2d at 28 (quoting *Eriks*, 118 Wn.2d at 459).

Robert Caruso refuses to withdraw. No Washington decision entails a court

disqualifying counsel on its own initiative. Based upon general principles of attorney

ethics and decisions from other jurisdictions, we hold we possess authority to disqualify

an attorney, whose representation of a client poses an actual conflict with himself or

another client.

The court need not wait for one of the parties to raise the conflict or move to

disqualify. A court has the authority and duty to inquire on its own initiative into

whether counsel should not serve because of a conflict with another client. *United States

v. Coleman*, 997 F.2d 1101, 1104 (5th Cir. 1993); *Estate of Andrews by Andrews v.

United States*, 804 F. Supp. 820, 824 (E.D. Va. 1992); *In re Chou-Chen Chems., Inc.*, 31

B.R. 842, 852 (Bankr. W.D. Ky. 1983). In cases where counsel is in violation of

23

professional ethics, the court may act sua sponte to disqualify. *O'Connor v. Jones*, 946 F.2d 1395, 1399 (8th Cir. 1991). A court has not only the right, but also the duty to safeguard ethical practice as part of its inherent power to supervise its own affairs. *In re Mt. Vernon Plaza Cmty. Urban Redevelopment Corp. I*, 85 B.R. 762, 765 (Bankr. S.D. Ohio 1988). In *Yates v. Applied Performance Technologies, Inc.*, 209 F.R.D. 143, 152, 154 (S.D. Ohio 2002) and *Cramer v. Chiles*, 33 F. Supp. 2d 1342, 1346 n.2 (S.D. Fla. 1999), courts on their own initiative disqualified counsel for a conflict of interest.

We recognize that the authority, upon which we rely, comes from federal courts, but see no reason to distinguish between a state court and a federal court for purposes of enforcing ethical standards. Also, several Washington decisions imply that a court has inherent authority to disqualify an attorney. The trial court has a duty to inquire into a potential conflict of interest only if there are special circumstances such that the trial court knows or reasonably should know that a particular conflict exists. *State v. White*, 80 Wn. App. 406, 413, 907 P.2d 310 (1995); *State v. Martinez*, 53 Wn. App. 709, 715, 770 P.2d 646.

If an attorney does not heed an admonition to withdraw, he injures his profession, demeans it in the eye of the public, does a disservice to this court, and runs the risk even of subverting the justice system. *Int'l Bus. Machines Corp. v. Levin*, 579 F.2d 271, 283 (3rd Cir. 1978); *Chou-Chen Chems., Inc.*, 31 B.R. at 852. To protect judicial integrity, this court must address conflicts of interest directly when they appear. *MacArthur v.*

24

*Bank of N.Y.*, 524 F. Supp. 1205, 1209-10 (S.D.N.Y. 1981); *Chou-Chen Chems., Inc.*, 31 B.R. at 852.

We are mindful of the delay and financial hardship Rick and Linda Wixom face as a result of our order of disqualification. Rick should obtain new counsel and Linda must respond to any forthcoming brief Rick may file. But the rules do not permit exception to the ethical precepts enshrined in the rules of professional conduct. If expense is an exception, the exception would soon swallow the rule. *Premium Products, Inc. v. Pro Performance Sports, LLC*, 2014 WL 644398 (E.D. Va. Feb. 19); *see, also e.g., United States v. Peng*, 766 F.2d 82, 87 (2d Cir. 1985); *Universal Athletic Sales Co. v. Am. Gym, Recreational & Athletic Equip. Corp.*, 546 F.2d 530, 538 n.21 (3d Cir. 1976); *Wickes v. Ward*, 706 F. Supp. 290, 293 (S.D.N.Y. 1989); *Fed. Deposit Ins. Corp. v. Sierra Res., Inc.*, 682 F. Supp. 1167, 1171 (D. Colo. 1987); *Kalmanovitz v. G. Heileman Brewing Co.*, 610 F. Supp. 1319, 1326 (D. Del. 1985); *May's Family Ctr. Inc. v. Goodman's Inc.*, 590 F. Supp. 1163, 1165 (N.D. Ill. 1984); *Teleprompter of Erie, Inc. v. City of Erie*, 573 F. Supp. 963, 966 (W.D. Pa. 1983); *MacArthur*, 524 F. Supp. at 1210.

Self Representation

Upon withdrawal of Robert Caruso from representation of Rick Wixom, Caruso still holds obligations to Wixom. A difficult question is whether Caruso may represent himself and continue to advocate, on his behalf, that any sanctions should be imposed only on his client.

RPC 1.9 addresses duties owed a former client. The rule reads, in relevant part:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Under this rule, a lawyer who has represented multiple clients in a matter may not represent one of the clients against the others in the same or a substantially related matter after a dispute arises among the clients in that matter, unless all affected clients give informed consent. RPC 1.9 cmt. 1. If we literally apply the rule and its comment, we must order Robert Caruso to cease representing himself in this appeal. Caruso will either need to hire his own lawyer or end advocacy of his position that only Rick Wixom should pay the fees and costs awarded Linda Wixom. Otherwise, Caruso would represent one client, himself, against another client, Rick Wixom, in the same matter after a dispute has arisen. We might also need to address whether we would permit Wixom to waive any conflict.

We find no case wherein a court addresses whether an attorney, when assessed sanctions jointly with his client, may continue to represent himself. Therefore, we review the competing policies and goals behind whether the lawyer should be disqualified. For the time being, we do not disqualify Robert Caruso from further representation of himself, but we impose certain restrictions upon him consistent with the rules of professional conduct that may, in essence, result in disqualification.

An attorney may represent himself in a lawsuit brought by a client for legal malpractice. *Farrington v. Law Firm of Sessions, Fishman*, 96-1486 (La. 2/25/97), 687 So. 2d 997, 1001-02. In this setting, the client initiates the conflict. The nature of the suit may bring client confidences into a public forum, such that the client impliedly waives the attorney-client privilege. Rick Wixom did not instigate the conflict with Robert Caruso, nor has Wixom voluntarily waived any confidential communication privilege. Thus, the legal malpractice rule should not apply.

The federal district court addressed a similar situation in *Anschutz Petroleum*, 112 F.R.D. 355. The court granted plaintiff's motion to strike defendants' third-party complaint and granted plaintiff's motion for sanctions under FRCP 11. The court imposed sanctions only upon defendants' counsel. The court further noted that, if counsel wished to shift some of the sanctions upon his clients, the client must be represented by separate counsel. The court did not rule that counsel would need to hire independent counsel for himself.

*Anschultz Petroleum* was decided in a different context. The court found the suit to be frivolous because counsel asserted thoughtless theories based upon undisputed facts, not because the defendants personally forwarded unsupported factual allegations. In the present case, Rick Wixom and his new wife testified about alleged conduct of Linda Wixom that had no basis in fact. Thus, they may be at fault for at least some of the frivolity of the suit. At the same time, Rick Wixom asserted many of the factual

27

allegations only after Robert Caruso appeared as counsel. The tactics taken by Wixom changed upon representation by Caruso. Thus, Rick Wixom and Robert Caruso could engage in legitimate and noteworthy finger pointing at one another.

Central to the attorney's duty of loyalty is not to devote time and effort to harm the client's interests. Because Robert Caruso placed in his brief a section arguing that sanctions should not be imposed upon him to the detriment of his client, we strike that portion of his brief found on pages 45-46.

We hold that Robert Caruso may argue that sanctions should be imposed only upon Rick Wixom, assuming we uphold any sanctions. Nevertheless, Caruso may do so only through representation by independent counsel. We reject the implication, in *Anschutz Petroleum*, 112 F.R.D. 355, that counsel, on his own, may attempt to shift sanctions to his client as long as the client has new, independent counsel. Such conduct by an attorney against a former client firmly implicates the duty not to harm a former client in the matter related to the attorney's representation of the client.

We note that, if Robert Caruso employs an independent attorney to advocate on his behalf, Caruso could merely provide his lawyer the facts and arguments on his behalf and the attorney could simply adopt those positions. Caruso could simply ask his counsel to file a brief identical to the section of the brief we struck. Conceivably, Caruso could write any further briefs that the attorney could sign without review. Robert Caruso could thereby do indirectly what we bar him from doing directly. We see no way to avoid this

situation other than we note that Caruso's counsel will be bound by professional rules to use independent judgment and not to forward any frivolous claims on behalf of Caruso.

A reason behind disqualifying an attorney from representing a client against a former client is that the attorney may hold confidences of the former client that could be used, sometimes subtly, against the former client. RPC 1.8(b); RPC 1.9(c)(1). To his credit, Caruso did not employ any confidential information when advocating that any sanctions should be imposed only upon Wixom. We hold, however, that, Caruso may not in any later filing, through new counsel, disclose any confidences of Rick Wixom, unless the disclosure reasonably responds to any accusation made by Wixom against Caruso.

## CONCLUSION

We remove Robert Caruso from representing Rick Wixom in this appeal, and we strike that portion of Wixom's opening brief, in which Caruso argues any sanctions should be imposed only against his client. We defer the hearing on the merits to our December docket, without oral argument. Rick Wixom and Robert Caruso may hire new counsel and address the question of upon whom sanctions should be imposed, assuming this court upholds the award of attorney fees and costs below. If Caruso wishes to argue that sanctions should only be imposed upon Wixom, Caruso must do so through independent counsel. In any new brief, neither Caruso nor Wixom may address again whether the award entered by the trial court should be upheld. If either Rick Wixom or Robert Caruso file another brief, the brief must be filed by Friday, September 5, 2014.

29

No. 30851-1-III
*In re Marriage of Wixom*

Rick Wixom or Robert Caruso may respond to the other's brief by September 26, 2014.

Linda Wixom may file a responsive brief also by Friday, September 26, 2014.

Fearing, J.

I CONCUR:

Siddoway, C.J.

Lawrence-Berrey, J.