IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SARA RHODES, an individual, | ) | |
| | ) | No. 35920-4-III |
| Appellant/Cross Respondent, | ) | (consolidated with |
| | ) | No. 36227-2-III) |
| v. | ) | |
| | ) | |
| BARNETT & ASSOCIATES, P.S., | ) | UNPUBLISHED OPINION |
| a Washington corporation, and | ) | |
| RYAN BARNETT AKA RYAN | ) | |
| MOOSBRUGGER, a married individual, | ) | |
| | ) | |
| Respondents/Cross Appellants. | ) | |

SIDDOWAY, J. — Sara Rhodes appeals the dismissal of her complaint as a

discovery sanction, after she requested an extension of time rather than comply with an

order setting a deadline for her response to discovery. We reverse the dismissal, which

was not warranted under the *Burnet*[1] factors. We also reverse the underlying order, since

a discovery master, whose recommendations were adopted by the trial court, did not give

meaningful consideration to Ms. Rhodes's objections to discovery and request for a

protective order. We provisionally reverse four fee and cost awards, without constraining

the trial court's authority to revisit them in future proceedings.

---

[1] *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997).

FACTS

According to her amended complaint for damages, Sara Rhodes became employed by Barnett & Associates on August 11, 2014, after it acquired the business of her former employer, for whom she had worked as an administrative assistant and bookkeeper. The complaint alleges that Ryan Barnett, who became Ms. Rhodes's supervisor, began making unwanted sexual advances toward her the first week they worked together. It alleges that Mr. Barnett's conduct quickly escalated to unremitting sexual harassment, including nonconsensual sex. Ms. Rhodes alleges that her last day of work for Barnett & Associates was October 15, 2014, and that she was constructively discharged as a result of the hostile work environment.

Within two weeks of the last day of her short tenure at Barnett & Associates, lawyer Kevin Roberts, then of the law firm of Dunn Black & Roberts, P.S., sent a demand letter to Mr. Barnett, threatening suit if Ms. Rhodes was not paid almost $1 million in settlement. Mr. Barnett's lawyer has characterized this as a "shakedown" over sex that occurred, but was consensual. Clerk's Papers (CP) at 564.

PROCEDURE

*2014 — 2016*

When the claim did not settle, Ms. Rhodes filed the action below in December 2014. She alleged, among other claims, sexual harassment in violation of chapter 49.60 RCW, assault, and battery.

2

Mr. Barnett removed the action to federal court,[2] but the district court found removal to be improper and remanded the case to the superior court in February 2015. Mr. Barnett moved for reconsideration of the remand order, filing a notice with the superior court clerk that he was challenging the remand. After reconsideration was denied, he appealed an award of attorney fees against him to the Ninth Circuit Court of Appeals.

On October 6, 2015, Mr. Barnett served Ms. Rhodes in the action below with interrogatories and requests for production, via e-mail directed to Mr. Roberts at dunnandblack.com. A week earlier, however, on October 1, Mr. Roberts left that law firm to start another firm, Roberts | Freebourn PLLC. On October 15, 2015, the law firm of Dunn Black & Roberts filed a notice of intent to withdraw as Ms. Rhodes's counsel, effective October 26, 2015. The notice indicated that Ms. Rhodes's last known name and address was in care of Mr. Roberts at Roberts | Freebourn. When answers and objections were not received to the discovery, Mr. Barnett took no action to compel responses for over a year and a half. His lawyer, Mary Schultz, later explained, "[W]e did not want to incur defense costs unnecessarily if [Ms. Rhodes] ultimately did not intend to [pursue the action]." CP at 516.

---

[2] This action, and certain others, were taken by Mr. Barnett and by related codefendants. For convenience, we attribute joint actions of defendants to Mr. Barnett.

Ms. Rhodes's briefing on appeal attributes the hiatus in state court proceedings to the Ninth Circuit appeal. Mr. Barnett's theory in the federal appeal was that attorney fees should not have been imposed because he properly removed the case to federal court, and the district court erred in ruling otherwise. But as his opening brief in the Ninth Circuit acknowledged, Mr. Barnett could effectively appeal only the fee award; appeal of the remand order was precluded by statute. Appellant's Opening Br., *Rhodes v. Barnett*, No. 15-35340 (9th Cir. Sept. 29, 2015) (ECF No. 12).

The action nonetheless remained almost entirely dormant on both sides. Roughly a year of inaction was self-attributed by superior court Judge James Triplett to a mistaken understanding in his chambers that the state court matter was stayed.

*2017*

On May 24, 2017, lawyers for the parties were notified by the Ninth Circuit Court that Mr. Barnett's appeal, which had been set for oral argument on June 8, would be submitted without oral argument instead. *See* Order, *Rhodes v. Barnett*, No. 15-35340 (9th Cir. May 24, 2017) (ECF No. 35). The federal district court's fee award against Mr. Barnett was affirmed in a decision filed a couple of weeks later.

On June 7, Mr. Roberts's legal assistant forwarded a stipulated motion to amend Ms. Rhodes's complaint to Ms. Schultz. Ms. Schultz responded that she would not agree to amendment until she received answers to her discovery. Mr. Roberts replied,

I will look at the discovery. I don't recall what the procedural issues were, but now that we are remanded and the case is getting back on track I will meet with my client and get them answered. I will be out of the office [on] a vacation with my children the week of June 19 but have them to you by June 30, 2017.

CP at 694. Ms. Rhodes did not provide the promised responses by June 30 or for several months thereafter.

Mr. Barnett moved to compel responses to the written discovery a couple of months later, on September 5, 2017. Ms. Schultz struck the hearing after Mr. Roberts agreed to provide responses by September 20.

Two weeks later, Mr. Barnett moved to amend the case schedule order and continue the trial date. Ms. Schultz's supporting declaration stated that the parties were in agreement to modify the discovery cutoff or continue the trial date as necessary.

On September 20, responses and objections, signed by Ms. Rhodes and Mr. Roberts, were delivered to Ms. Schultz as agreed. Many objections were interposed. The 42 interrogatories and 18 requests for production were responded to as follows:

- 10 interrogatories were answered without objection,
- 5 interrogatories and 3 requests for production were objected to, but without waiving the objection, were answered,
- 1 request for production was objected to, but without waiving the objection, was partially answered,
- 2 interrogatories and 3 requests for production were responded to as "needs to be limited" in scope or time, and
- 25 interrogatories and 11 requests for production were objected to in their entirety.

5

*See* CP at 568-84.

In response to the many objections, Mr. Barnett supplemented and renoted his earlier-served motion to compel. He argued that Ms. Rhodes's objections were interposed in bad faith and asked that a judgment of default be entered against her as a discovery sanction. Ms. Rhodes responded, arguing that Mr. Barnett had not met and conferred before filing the motion as required by CR 26(i) and LCR 37(a). She cross moved for a protective order, arguing that the purpose of Mr. Barnett's discovery was "to annoy, embarrass and harass," characterizing the discovery as "includ[ing] requests about Ms. Rhodes sexual history, veiled accusations of illegal activity, and [as] seek[ing] to embarrass her by asking about her children and financial assistance." CP at 695-96.

The several motions were on for hearing before Judge Triplett on October 18. In the limited time he had available, he first addressed Mr. Barnett's unopposed motion to amend the case schedule order. The lawyers agreed to set the trial more than a year out, to begin on November 5, 2018. The case schedule order generated that day set a discovery cutoff of August 31, 2018.

Turning to the discovery cross motions, Judge Triplett, who said he had read all the parties' submissions, expressed concern about his schedule and the time that would be required to address all of the discovery requests and objections. He told the lawyers:

> I'm a little worried about, number one, being able to just literally work my way through every one of these, and what do we have, 35 of the 40—40 interrogatories, 42 interrogatories, 18 requests for productions, most of

6

> which have objections to.  I would have to work my way through each one
> of these and at least get some idea as to—I will have to make a call as to,
> first off, whether they're relevant or could lead to relevant evidence.

Report of Proceedings (RP) (Oct. 18, 2017) at 13.  He continued, "I'm not sitting here saying that, you know, every one of these questions are going to lead to relevant evidence.  So I literally have to go through each one."  *Id*.  He informed the parties that his availability "would be very limited" and solicited the lawyers' thoughts on appointing a discovery master.  RP (Oct. 18, 2017) at 14.  After hearing them out, he decided to appoint one.

Two individuals were suggested as possible discovery masters and Judge Triplett spoke to both telephonically, during the hearing, on the record.  The judge explained to the discovery master who was thereafter appointed:

> The defendant who is being accused of rape in the complaint is wanting to
> get into asking some discovery questions about other behaviors that they
> believe will lead to relevant evidence, and the plaintiff is opposing those,
> feeling that they are harassing and overly broad and not intended to result
> in relevant evidence, and at this point, there is 40-some questions and 18
> requests for productions.  There's going to be a deposition where a lot of
> these same objections may come up, and I just need a discovery master to
> help resolve those issues.

RP (Oct. 18, 2017) at 43.  He also told the prospective discovery master, "I have moved the trial date to November of '18, so we do have time to work our way through things."

RP (Oct. 18, 2017) at 45.  The discovery master was appointed by stipulated order on October 25.

A hearing before the discovery master took place on November 30. During the hearing, the process contemplated by Judge Triplett—working through each request and objection—was not followed. Ms. Schultz, who the discovery master heard from first, argued that such a process was unnecessary, and given Ms. Rhodes's delay in responding to the discovery, "I really almost don't even see the complaint and the underlying claims as being particularly relevant." CP at 1074. Recounting that the discovery was served in October 2015, that Mr. Roberts agreed but failed to provide answers and objections by June 30, 2017, and that in responding on the second agreed deadline, he provided more objections than answers, she argued:

> [F]rom our perspective, any objections to the questions and any objections
> to any of the requests for production are waived because there was simply
> no privilege raised with anything, there's no protective order request that
> was made before the due date of the answers.

CP at 1077.[3]

When it was his turn to respond, Mr. Roberts suggested that since there had been no meet and confer process before the motion to compel was filed, the discovery master should order that process to take place "so that we can limit it down to what's really at issue." CP at 1081. He said, "If there are specific issues remaining after that, then we

---

[3] The federal rules of civil procedure (which permit a party to pose only 25 interrogatories) provide for waiver of objections to interrogatories in the event of an untimely response, although they also allow the court to excuse untimeliness. Fed. R. Civ. P. 33(b)(4). CR 33 does not include the federal rule's language.

can address it at a subsequent hearing." *Id.* He argued, "There's no prejudice, we've

continued the trial." *Id.*

Before the discovery master or either lawyer addressed any individual discovery

request, the discovery master stated, "I'm going to go ahead and make some findings that

much of the information that is requested is appropriate." CP at 1093. It continued, "I

have seen very similar questions, many, many questions in personal injury cases from the

defense merely because allegations are made." *Id.*

After this preliminary ruling, Mr. Roberts asked for a protective order allowing

him to provide at least some of Ms. Rhodes's answers as "Attorney Eyes Only," with Mr.

Barnett able to contest the designation. CP at 1095-96. Ms. Schultz objected to any

interference with her clients' free use of any information received.

As the hearing continued, only 13 of the challenged interrogatories and requests

for production were opened up for what was mostly very limited argument.

- There was some discussion of interrogatory 32, which asked if Ms. Rhodes had
  been involved in any way in sexual trafficking or prostitution activity, and to
  "describe such involvement, with dates and activity." CP at 580.
- Interrogatory 2, which requested Ms. Rhodes's social security number was raised.
  Ms. Schultz observed that her client probably already had the number as Ms.
  Rhodes's former employer, and Mr. Roberts withdrew Ms. Rhode's objection to
  that request.
- Mr. Roberts brought up interrogatory 37, which inquired about his dealings with
  Ms. Rhodes. He had no objection to identifying the date when Ms. Rhodes sought
  his legal representation, but objected to the questioning about "where and how you
  met him, on what legal matters you had used him previously, and whether you

9

    socialized with him, or had business or personal dealings with him prior to filing your action."  CP at 581.

- The discovery master inquired about interrogatory 38, which asked Ms. Rhodes to identify "all attorneys you have used for any purpose" and "all legal matters that each of those attorneys handled or for which they provided consultation."  CP at 581.

- There was brief discussion of two interrogatories (40 and 41) and two requests for production (17 and 18), which asked about Ms. Rhodes's fee and cost arrangements with Mr. Roberts, all payments made to him, and who had made the payments.  The production requests sought copies of the fee agreement and initial correspondence.

- There was discussion about discovery into Ms. Rhodes's employment history, which Mr. Roberts explained was objectionable because it was overbroad; he was requesting a shorter time frame than presented by request for production 3, which asked Ms. Rhodes to produce all applications for employment submitted or resumes used since 2005.

- There was discussion about interrogatories 9 and 17, the first of which sought information about "financial assistance" Ms. Rhodes had received in the past five years, and the second of which sought identification of "any and all forms of state or federal government aid" she had ever received, "including Public Assistance, food stamps, [and] state medical, educational grants."  CP at 571, 575.

- Mr. Roberts raised interrogatory 13, which asked about any employers in the prior 10 years with whom Ms. Rhodes had engaged in consensual or nonconsensual sexual contact or a sexual relationship, and interrogatory 31, which asked if Ms. Rhodes was "involved in any way in, alleged to be involved in, [or] contacted by police . . . or . . . any investigator" regarding sting operations "related to alleged sexual trafficking, sex industry involvement, and/or prostitution activity."  CP at 573, 580.

    The discussion of these 13 discovery requests appears on approximately 19 pages of the 63-page transcript of the hearing.  The remaining 23 discovery requests to which Ms. Rhodes objected were never discussed.

The discovery master's report and recommendation to the court was filed on December 10. It recommended that "[d]espite [Ms. Rhodes's] compelling arguments," she be ordered to answer all of Mr. Barnett's discovery requests without narrowing, and to execute a medical release by December 21, 2017. The December 21 date was arrived at based on Mr. Roberts's report at the hearing that he had a jury trial that was expected to run from December 11 to 15, and before December 11 would be "focused on that." CP at 1129. The report and recommendation was that Ms. Rhodes's request for a protection order be denied, but that "the parties and the Discovery Master hold a telephonic conference, once the responses are completed and served, to discuss if certain information should be held as confidential and for 'attorneys' eyes only.'" CP at 816. It recommended that Mr. Barnett's fees incurred in preparing and filing the motion be granted.

Judge Triplett entered the report and recommendation as the order of the court on December 18. He did not have a transcript of the hearing before the discovery master. It was not prepared until late February 2018, and was not filed with the court until March 16, 2018, after this appeal was filed.

On December 20, 2017, Mr. Roberts e-mailed to the discovery master and Ms. Schultz a motion for extension of time, requesting 30 additional days to provide responses to the discovery. His supporting declaration attached a December 1, 2017 article from *The Spokesman-Review* reporting on the arrest of a Spokane police officer,

11

Nicholas Spolski, who had been charged with fourth degree domestic violence assault after allegedly hitting his girlfriend. The newspaper article stated that a no-contact order had been issued. Mr. Robert's declaration explained that Ms. Rhodes and her children had been living with Nicholas Spolski and that she was the victim of the assault. It stated that she was "currently in the process of recovering from it and focusing on finding a home for her children and working through the issues associated with this crisis" and concluded, "Given the length of time before trial, this will cause no prejudice." CP at 1313.

Mr. Roberts informed the discovery master that he would be leaving town for holiday travel. Electronic mail suggests that he would be traveling for two weeks and that the discovery master agreed his reply brief on the extension issue could be filed on January 4.

On December 28, Mr. Barnett's response to the motion for extension was e-mailed to the discovery master and Mr. Roberts. Mr. Barnett made a renewed request that a default judgment of dismissal be entered. The response was supported by filings from two other legal proceedings involving Ms. Rhodes, which it characterized as relevant because they reflected Ms. Rhodes's appearance and participation in other legal matters at times when she was not responding to discovery from Mr. Barnett.[4]

---

[4] One proceeding began in 2009 as a parentage proceeding involving Ms. Rhodes's older child and appears to have involved ongoing custody disputes culminating

No. 35920-4-III (consol w/ No. 36227-2-III)
*Rhodes v. Barnett & Assocs.*

The discovery master conducted a telephonic hearing on January 10. There is no transcript or even a recording of the call.[5] The discovery master's report and recommendation, filed two days later, recommended that Ms. Rhodes's complaint be dismissed in the event she did not provide "complete and unequivocal" answers and production by January 16 at 5:00 p.m., reasoning that there had been "a sustained period of discovery noncompliance on Plaintiff's part." CP at 846, 850. The discovery master observed that the behavior alleged by Ms. Rhodes against Mr. Barnett was egregious and noted "the length of time that has gone by with such claims remaining public and unresolved." *Id.* at 846. It pointed out that it had previously found defense discovery requests were "relevant inquiries, and, in many cases, near standard issue." *Id.* It discounted Mr. Roberts's motion for an extension of time because Ms. Rhodes "herself provided . . . no declaration, testimony or evidence." *Id.* It recommended that further fees be imposed against Ms. Rhodes and awarded to the defendants.

---

in a November 2017 trial. The other appears to have been a protection order action by Ms. Rhodes against the father of her younger child that began in August 2013, and was concluded in September 2013, when neither party appeared for a hearing.

[5] This was confirmed by counsel during oral argument. Because the discovery master, not the parties, requested an early morning telephonic hearing, we do not fault the parties for the lack of a record. Wash. Court of Appeals oral argument, *Rhodes v. Barnett & Assocs.*, No. 35920-4-III (Dec. 5, 2019), at 17 min., 15 sec. to 17 min., 25 sec.; 18 min. 50 sec. to 18 min., 57 sec., available at https://www.courts.wa.gov/appellate_trial_courts /appellateDockets/index.cfm?fa=appellateDockets.showOralArgAudioList&courtId=a03 &docketDate=20191205.

13

Mr. Barnett moved the trial court to adopt the discovery master's January 12 recommendations. Ms. Rhodes challenged the recommendations. In the body of Mr. Barnett's response, he included a request for CR 11 sanctions against Mr. Roberts.

Judge Triplett had assumed the position of chief criminal judge, so the report and recommendations and the parties' submissions were considered by another judge. When contacted by the newly-appointed judge about whether there would be oral argument, Mr. Roberts conceded that the stipulation and order did not provide for it. Ms. Rhodes's challenge to the recommendation had been "based on the pleadings presented in Plaintiff's Motion for Extension of Time," CP at 864, but like many materials submitted to the discovery master, Ms. Rhodes's motion and counsel's supporting declaration were not filed with the clerk of court, so the trial court did not have Ms. Rhodes's briefing before it in ruling on the cross motions.[6]

---

[6] The court might have thought it did, because Mr. Barnett filed what he characterized as "copies of communications between counsel and the Discovery Master leading to the hearing on that request," that did not include Ms. Rhodes's motion or its supporting declaration. CP at 884. We do not fault the defense for that submission, which comprised communications *other than* the parties' briefing. We only observe that it might explain why the trial court entered an order without questioning why it did not have the materials on which Ms. Rhodes relied.

The fact that Ms. Rhodes's motion for extension was missing from the record was noted on appeal, and the record was supplemented with the motion, which was filed with the trial court on December 6, 2019. In preparing the opinion, we realize that a reply from Ms. Rhodes on the extension issue also apparently exists, but remains absent from the record. *E.g.*, CP at 857, 847.

14

No. 35920-4-III (consol w/ No. 36227-2-III)
*Rhodes v. Barnett & Assocs.*

The trial court adopted the discovery master's report and recommendations, signing the form of judgment and order presented by Mr. Barnett on February 9.[7] Included in that judgment and order and in additional judgments entered thereafter were the following judgment amounts in favor of Mr. Barnett and the discovery master:

| Judgment Summary #; creditor | Filed Date | Amount | Representing |
|---|---|---|---|
| Judgment Summary I; Defendant Barnett | Feb. 15, 2018 | $4062.50 | Fees and costs incurred up to the Dec. 10, 2017 date of discovery master's first report and recommendation |
| Judgment Summary III; Defendant Barnett | Feb. 28, 2018 | $7,477.50 | Fees and costs incurred from Dec. 10, 2017 to Jan. 12, 2018 |
| Judgment Summary IV; Discovery Master | Feb. 28, 2018 | $3,812.50 | Discovery master fees |

Ms. Rhodes timely appealed the December 18, 2017 order adopting the discovery master's first report and recommendations; the February 9, 2018 order filed on February 15, adopting the discovery master's second report and recommendations; and the February 28, 2018 order on supplemental fees and discovery master fees.

---

[7] The order with judgment summaries signed on February 9, 2018, was entered on February 15, 2018, because court staff was under the impression that the original order had been misplaced. *See* CP at 1192. The record on appeal reveals that the original order was *not* misplaced, and two copies of the order, which differ only in the notation in Mr. Roberts's signature block, are presently in the record. They appear to have been given different judgment numbers. *Compare* CP at 1012-15 (#18901100-1) *with* CP at 1022-25 (#18901245-7).

After the appeal was filed, Mr. Roberts claims to have become aware for the first time that the court's February 9 order imposed CR 11 sanctions against him. Contending that no motion ever requested that relief and it could not have been the court's intent, Ms. Rhodes moved under CR 60 to amend the judgment and order to remove him as a judgment debtor. After considering the arguments of counsel and the record, the trial court agreed that there was good cause for the requested amendment. It nonetheless ordered Mr. Roberts to pay Mr. Barnett's fees, since the infirmity was apparent in Mr. Barnett's proposed order and was not raised before the order was entered.

Mr. Barnett appealed the decision granting the motion to amend the February 15 order, the amendment, and an order denying his motion for reconsideration. Ms. Rhodes filed a supplemental notice of appeal challenging the trial court's award to Mr. Barnett of fees and costs incurred in responding to the motion to amend the judgment.

## ANALYSIS

## APPEAL

I.   THE RECORD DOES NOT SUPPORT THE *BURNET* FACTORS, SO THE COMPLAINT
     SHOULD NOT HAVE BEEN DISMISSED

Generally, "the court may impose only the least severe sanction that will be adequate to serve its purpose in issuing a sanction." *Teter v. Deck*, 174 Wn.2d 207, 216, 274 P.3d 336 (2012). To dismiss an action as a sanction for discovery violations, "'it must be apparent from the record' that (1) the party's refusal to obey the 'discovery order

16

was willful or deliberate,' (2) the party's actions 'substantially prejudiced the opponent's ability to prepare for trial,' and (3) the trial court 'explicitly considered whether a lesser sanction would probably have sufficed.'" *Rivers v. Wash. St. Conf. of Mason Contractors*, 145 Wn.2d 674, 686, 41 P.3d 1175 (2002) (quoting *Burnet*, 131 Wn.2d at 494).

We review a trial court's imposition of discovery sanctions for abuse of discretion and should not disturb their use absent a clear showing that a trial court's discretion was manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006). In this case, since the trial court adopted the discovery master's recommendations, we review whether the discovery master's recommendation of dismissal was tenable. The discovery master applied the correct legal standard, so we focus on whether its findings were based on unsupported facts.

*Substantial prejudice to ability to prepare for trial*. The record does not support the discovery master's finding that Ms. Rhodes's failure to comply with the December 18, 2017 order substantially prejudiced Mr. Barnett's ability to prepare for trial. The prejudice found by the discovery master was that Mr. Barnett was entitled to "a full rules discovery period" that was lost due to the long passage of time after the discovery was initially served. CP at 849. Elsewhere, it noted the egregious nature of Ms. Rhodes's allegations and the "length of time that has gone by with such claims remaining public

and unresolved." CP at 846. But beginning on November 4, 2015, Mr. Barnett could have moved to compel responses to the discovery at any time. CR 33(a), 34(b)(3), 37(a)(2). *Cf. Bus. Servs. of Am. II v. WaferTech LLC*, 174 Wn.2d 304, 312, 274 P.3d 1025 (2012) (in reversing the dismissal of a complaint for five years' inaction, the court observed that after a year, defendant "could have moved at any time to dismiss [plaintiff's] claim for want of prosecution").

Ms. Rhodes had a duty under the rules to respond with objections and answers within 30 days, to be sure. But by suffering the discovery to go unanswered for over a year and a half before moving to compel responses, Mr. Barnett's argument that it was more reasonable for Ms. Rhodes's complaint to be dismissed than for him to wait another month for discovery responses rings hollow. More than six months remained before the discovery deadline. Ten months remained before trial.

*Lesser sanctions.* The record does not support the discovery master's finding that lesser sanctions would not suffice. It reasoned:

> Plaintiff has been accommodated by Defendants with additional time to respond last summer and again in early fall, and this accommodation did not result in answers. The trial continuance from Dec. 7th, the Court's referral of the compel motion to this Discovery Master, the order of directing compliance itself—all allowed Plaintiff additional time. The Court's order awarding fees for non-compliance affirmed the seriousness of this matter. Plaintiff has not responded to any of these accommodations.

CP at 849.

Repeated accommodations followed by unexplained failures to respond would be a basis for finding that imposing yet another deadline is not a viable sanction. But in this case, there had not been the five or six unexplained responses to accommodations suggested by the discovery master.

Ms. Rhodes did fail to provide responses by the June date promised by Mr. Roberts. But she responded by the deadline promised in September. Given the aggressive nature of the written discovery, objections and a request for a protective order were to be expected.[8] Once the objections were made and the protective order was requested, Ms. Rhodes was entitled to have those matters heard.

The trial continuance until November 2018 was ordered before the discovery master was appointed; the discovery master was even told about it when first contacted by Judge Triplett. It is not clear what the discovery master means by "the order directing compliance . . . allowed Plaintiff *additional* time." *Id.* Once the ruling was made on the cross motions to compel and for a protective order, Ms. Rhodes and her lawyer obviously needed time to comply with the ruling. Given Mr. Roberts's report of an impending trial,

---

[8] We do not approve of the extent to which, in objecting, Ms. Rhodes then failed to provide requested information to the extent it was not objectionable. On the other hand, given the nature of the case, the number and scope of the written discovery requests is questionable. None of Mr. Barnett's written discovery was needed or was used to determine Ms. Rhodes's allegations against him, which had been laid out in detail in October 2014 in her demand letter and complaint to police.

the three weeks afforded was a reasonable but not an overly-generous period for compliance.

While the discovery master was dismissive of Ms. Rhodes's need for an extension of time to respond in December, the request for the additional 30 days was explained and was made before the original deadline. In short, of the five or six "accommodations" to which Ms. Rhodes allegedly did not respond, she failed to respond only in June 2017. She either responded or timely claimed and explained an inability to respond thereafter.

The adopted recommendation that Ms. Rhodes could avoid dismissal only by providing complete and unequivocal answers by January 16 effectively deprived her of her right to challenge the recommendation. The order appointing the discovery master gave a party five court days within which to challenge a discovery master recommendation. The discovery master's Friday, January 12 recommendation that Ms. Rhodes must answer all of the discovery by the next Wednesday (following the Martin Luther King holiday) or have her complaint dismissed left Ms. Rhodes with only two court days within which to not only challenge the recommendation, but also obtain court review.

Mr. Barnett's original motion to compel identified a different sanction that would have sufficed: a deadline for responses and execution of the medical release, with Ms. Rhodes's deposition to take place within a fixed time frame thereafter, sufficiently in advance of the discovery deadline. *See* CP at 515. And as Mr. Roberts suggested at oral

argument, if the discovery master viewed it as dispositive that it see something from Ms.

Rhodes personally, then a lesser sanction would be to *let him know* it viewed that as

dispositive—and give him a time frame within which to respond. Wash. Court of

Appeals oral argument, *supra*, at 12 min., 19 sec. to 12 min., 33 sec.[9]

*Willful failure.* Finally, the finding by the discovery master of a "willful" failure

to comply with the December 21 deadline is poorly explained and documented. CP at

877. "A party's disregard of a court order without reasonable excuse or justification is

deemed willful." *Rivers*, 145 Wn.2d at 698.

Ms. Rhodes moved for an extension of time on the day before the original

response deadline. Mr. Roberts's supporting declaration with its attached newspaper

article was evidence of a disruption in Ms. Rhodes's and her children's living situation

that might be significant. The discovery master had been made aware of and had agreed

to accommodate Mr. Roberts's two week holiday travel. These *are* excuses and

justifications. Unless unreasonable, they negate willfulness. The discovery master does

not explain why they were unreasonable, although it alludes to the absence of a

---

[9] In a declaration filed in May 2018, Ms. Rhodes responded to Ms. Schultz's argument that she had abandoned her claim and Mr. Roberts was taking unilateral unauthorized actions in her name. She testified, "I hired Kevin Roberts to represent me, as he still does"; "Kevin Roberts is my lawyer and has been acting as such in this case. There is no basis for Mary Schultz to suggest otherwise"; "In reviewing Mary Schultz's most recent claims that I am unaware of my lawyers' actions, I want the Court to know that is not true and I have been kept informed by my lawyers and made decisions presented to me about my case and how to proceed." CP at 1254.

declaration from Ms. Rhodes. We find nothing in the record that should have signaled to Mr. Roberts that relying on his own declaration instead of one from his client would prove dispositive to Mr. Barnett's dismissal request. On procedural matters courts routinely rely on representations from lawyers about their clients' situations.

The discovery master's second report and recommendations state that during the telephonic hearing on the extension request, it gleaned from Mr. Roberts's answers and his refusal to disclose some communications that he was not in contact with his client. This was evidently the basis for the willfulness finding.[10] Mr. Roberts concedes he was sometimes unable to contact Ms. Rhodes during December 2017, but asserts he was in contact with her before the telephonic hearing on the extension request. Unfortunately, we have no record of the telephonic hearing. At a minimum, the finding of a willful failure to comply is poorly supported by the record.

---

[10] Beginning in January, Mr. Barnett informally advanced the contention that Ms. Rhodes had abandoned her complaint. Dismissal for want of prosecution is addressed by CR 41(b), under which a defendant can file a motion based on a lack of action required under that rule. The rule contemplates that the issue will be squarely presented by a motion on 10 days' notice and that the dismissal, if ordered, is without prejudice.

The rule also authorizes a trial court to dismiss an action for noncompliance with a court order or court rules. But it is the general policy of Washington courts not to resort to dismissal lightly. *Woodhead v. Disc. Waterbeds, Inc.*, 78 Wn. App. 125, 130, 896 P.2d 66 (1995). Where a court has found that a party has acted in willful and deliberate disregard of reasonable and necessary court orders and has prejudiced the other side by doing so, dismissal has been upheld as justified. *Id.*

Whatever the basis for a request for dismissal under CR 41(b), a plaintiff is entitled to have it squarely presented, by a motion, to which the plaintiff can respond.

A lack of support for any one of the *Burnet* factors makes the severe sanction of dismissal unwarranted. The judgment of dismissal must be reversed.

II.     MS. RHODES DID NOT GET THE CONSIDERATION OF HER OBJECTIONS AND PROTECTIVE ORDER REQUEST TO WHICH SHE IS ENTITLED UNDER COURT RULES

Ms. Rhodes also challenges the trial court's order on the discovery master's first report and recommendation, which compelled responses to all of Mr. Barnett's discovery requests, without narrowing, and denied her request for a protective order.

Article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs . . . without authority of law." "Authority of law" generally includes authority granted by "a valid, (i.e., constitutional) statute, the common law or a rule of [the Supreme Court]." *State v. Gunwall*, 106 Wn.2d 54, 68-69, 720 P.2d 808 (1986) (emphasis omitted). The civil rules dealing with discovery provide authority of law for intruding into private affairs, but as the United States Supreme Court observed in *Seattle Times Co. v. Rhinehart*, it is important to view the discovery rules in their entirety:

> Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties. . . .

23

467 U.S. 20, 35, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984) (footnote omitted).  Privacy

rights are a matter "implicit in the broad purpose and language" of CR 26(c).  *Id*. n.21.

Article I, section 7 of the Washington Constitution protects individuals from intrusions

into "private affairs," a privacy interest "that the court necessarily evaluates when

considering a motion for a protective order under CR 26(c)."  *T.S. v. Boy Scouts of Am.*,

157 Wn.2d 416, 431, 138 P.3d 1053 (2006).

The discovery rules gave Mr. Barnett the right to obtain discovery regarding "any

matter, not privileged, which [was] relevant to the subject matter involved in the pending

action."  CR 26(b)(1).  And it was "not ground for objection that the information sought

[would] be inadmissible at the trial if the information sought appear[ed] reasonably

calculated to lead to the discovery of admissible evidence."  *Id.*  In this case, ER 412,

which imposes a heightened standard of probativeness before evidence of a victim's

sexual behavior or sexual predisposition can be admitted, would inform the analysis of

CR 26(b)(1) relevance.[11]

The rules gave Ms. Rhodes the right to respond to written discovery with

objections if she believed Mr. Barnett's interrogatories or requests for production sought

---

[11] ER 412 provides that the probative value of the evidence must substantially outweigh the danger of harm to any victim and of unfair prejudice to any party.  It also provides that the proceedings on whether the evidence can be offered must be sealed unless the court orders otherwise.

information that did not appear reasonably calculated to lead to the discovery of admissible evidence. CR 33(a), 34(b)(3)(B). And those rules gave her the right to move the court for a protective order against annoyance, embarrassment or oppression, including an order providing that discovery not be had, that certain matters not be inquired into, or that the responsive information be treated confidentially. CR 26(c). While the superior court rules give a party the right to serve discovery, a responding party's right to judicial review of the discovery is essential to the rules' constitutionality under article I, section 7 of the Washington Constitution. *State v. Reeder*, 184 Wn.2d 805, 819, 365 P.3d 1243 (2015). Mr. Barnett's right to obtain discovery was not more important than Ms. Rhodes's right to object that he was exceeding its proper scope or that the intrusive nature of the discovery warranted protection under CR 26(c).

In adopting the discovery master's report and recommendations, Judge Triplett did not have an opportunity to review the transcript of the hearing conducted by the discovery master. We do. By adopting the discovery master's report and recommendation, the court's order is reviewed against the discovery master's record.

Where the harsh remedy of dismissal is imposed, discovery decisions are appealable as a matter of right; otherwise, only discretionary review is possible—and rare. When discovery orders are eligible for review, we review them for manifest abuse of discretion. *Gillett v. Conner*, 132 Wn. App. 818, 822, 133 P.3d 960 (2006). "Judicial discretion 'means a sound judgment which is not exercised arbitrarily, but with regard to

25

No. 35920-4-III (consol w/ No. 36227-2-III)
*Rhodes v. Barnett & Assocs.*

what is right and equitable under the circumstances and the law, and which is directed by the reasoning conscience of the judge to a just result.'" *T.S.*, 157 Wn.2d at 423 (quoting *State ex rel. Clark v. Hogan*, 49 Wn.2d 457, 462, 303 P.2d 290 (1956)).  A trial court necessarily abuses its discretion if it applies the incorrect legal standard.  *Id.* at 423-24.

The discovery master abused its discretion by failing to address, in a balanced way, Mr. Barnett's right to discovery against Ms. Rhodes's right to object and seek protection.  Most of Ms. Rhodes's objections were never addressed at all.[12]  Those that were did not receive meaningful consideration.  For example, when Mr. Roberts raised Mr. Barnett's interrogatory asking if Ms. Rhodes was ever contacted about, involved in any way, or alleged to have been involved in any way in a sexual trafficking sting operation, the discovery master gingerly asked about the possible relevance to Mr. Barnett's defense and accepted an unhelpful response:

> [DISCOVERY MASTER:]  Ms. Schultz, without conveying strategy that you may feel compelled to keep confidential with your client and assert privilege, is there information in that regard that you feel is relevant that you know of?
>
> MS. SCHULTZ:  There's a concern.
>
> DISCOVERY MASTER:  Okay.

CP at 1122.

---

[12] We are satisfied from review of the hearing transcript that this was not because Ms. Rhodes failed to raise the objections.  The discovery master telegraphed early on that it had already concluded that the discovery requests were, as it would later describe them, "relevant . . . and, in many cases, near standard issue."  CP at 846.

26

Ms. Schultz's overarching explanation for why Mr. Barnett was entitled to discovery into, e.g., the father of Ms. Rhodes's children, any prior consensual relationships with employers, any public assistance she had received, and other personal matters, was not persuasive:

> [MS. SCHULTZ:] . . . [O]n the one side here's Mr. Barnett who, you know, got himself into a despicable position because he had an affair, he was having an affair on his wife, his pregnant wife, in California, who's a dentist. Okay? So, you know, the jury's not going to be looking at him as though he's, you know, a particularly above-board kind of guy.
> And here's, you know, who counsel wants to represent as, you know, this poor unassuming victim that worked for him. *Well, the playing field has to be leveled here.* He's done some bad things; she's put them all over the pleadings here and accused him of rape and then filed it in the Spokane Superior Court and blown up his business.
> *So does he now get to understand who this person is and to be able to explain to the jury who this person is? And I think he does.*

CP at 1124-25 (emphasis added).

Turning to Ms. Rhodes's request to be able to provide some responses provisionally as "attorneys' eyes only," the discovery master's recommendation that it and the parties confer about that possibility "once the responses are completed and served" gave Ms. Rhodes no protection at all. CP at 1053. The horse would be out of the barn. Ms. Schultz was clear that Mr. Barnett was participating in preparing his case and argued for the right to make any use of the information obtained in discovery. Even where a court might not ultimately grant protection, a more reasonable approach to discovery into truly private affairs is to allow confidential designations provisionally,

27

subject to review and rejection by the court. *See, e.g.*, the following decisions in sexual harassment cases: *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 361 (D. Colo. 2004) (some diary entries ordered disclosed, but for attorneys' eyes only); *Sanchez v. Zabihi*, 166 F.R.D. 500, 503 (D.N.M. 1996) (interrogatory about prior romantic or sexual advances narrowed, limited to three years, and with response for attorneys' eyes only); *Herchenroeder v. Johns Hopkins Univ. Applied Physics Lab.*, 171 F.R.D. 179, 182 (D. Md. 1997) (two narrowed interrogatories ordered answered, but not until a protective order/confidentiality agreement was in place).

We do not suggest that in ruling on discovery objections a trial court must always entertain argument and orally rule on an objection-by-objection basis. Sometimes it is clear from the nature of the case that the discovery sought is relevant within the meaning of CR 26(b)(1) and is not overbroad. Sometimes it will be clear that no privacy interest is implicated that warrants protection. That is not the case with Mr. Barnett's discovery, however. While he might ultimately provide persuasive explanations for much and perhaps all of his discovery, it *does* intrude into private affairs. Some of the discovery, given the nature of the case, appears overbroad. Ms. Rhodes's objections and request for protection could not reasonably be rejected out of hand.

Sometimes the parties' briefing, informed by meeting and conferring as required by CR 26(i), will provide a trial court with enough information to assess CR 26(b)(1) relevance and the need, if any, for a protective order. But there was no CR 26(i)

28

conference in this case.[13]  While the discovery master's report characterized the parties as having "briefed their positions extensively," CP at 816, Mr. Barnett's briefing was general in nature.  In none of his briefing did he undertake to explain how specific requests were reasonably calculated to lead to the discovery of admissible evidence.

Providing meaningful review of a responding party's objections and request for protection is required not only to protect their rights under the discovery rules, but to safeguard their even more basic right to access to the courts.  As our Supreme Court observed in *Seattle Times v. Rhinehart*, individuals who learn that their privacy concerns will be rejected out of hand, may, rather than expose themselves, "forgo the pursuit of their just claims.  The judicial system will thus have made the utilization of its remedies so onerous that the people will be reluctant or unwilling to use it."  98 Wn.2d 226, 254, 654 P.2d 673 (1982), *aff'd*, 467 U.S. 20, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984).

We reverse the trial court's December 18, 2017 order adopting the discovery master's report and recommendation, and remand for a rehearing of the parties' cross motions to compel and for a protective order.

---

[13] We reject Ms. Rhodes's argument that Mr. Barnett's motion to compel should automatically fail on account of his failure to comply with CR 26(i).  We agree with the decision of Division One in *Amy v. Kmart of Wash., LLC*, 153 Wn. App. 846, 858, 223 P.3d 1247 (2009) that refusing to hear a party's motion to compel because it failed to comply with CR 26(i) is discretionary with the trial court.

ATTORNEY FEES AND SANCTIONS:
APPEAL AND CROSS APPEAL

Following the trial court's entry of an amended judgment and order on September 7, 2018, the following monetary judgments and orders are operative:

| Judgment Summary #; creditor and debtor | Filed Date | Amount | Representing |
|---|---|---|---|
| Judgment Summary I Creditor: Barnett Debtor: Roberts and Rhodes | Feb. 15, 2018 | $4062.50 | Fees and costs incurred up to the Dec. 10, 2017 date of discovery master's first report and recommendation |
| Judgment Summary III Creditors: Barnett Debtor: Rhodes | Sept. 7, 2018 | $7,477.50 | Fees and costs incurred from Dec. 10, 2017 to Jan. 12, 2018 |
| Judgment Summary IV Creditor: Discovery Master Debtor: Rhodes | Sept. 7, 2018 | $3,812.50 | Discovery master fees |
| Order Re: Opinion on Reconsideration &c Creditor: Barnett Debtor: Roberts | Sept. 7, 2018 | $6,082.50 | Fees and costs incurred in responding to motion to amend judgment |

Ms. Rhodes appeals all the fee and cost awards. She appeals the fee and cost awards against her in Judgment Summaries I, III and IV on grounds that the trial court's orders adopting the discovery master's reports and recommendations were both in error. She challenges the imposition on Mr. Roberts of Mr. Barnett's fees incurred in responding to her motion to amend Judgment Summary I on grounds he should not have to pay fees and costs on a motion on which Ms. Rhodes prevailed.

Mr. Barnett cross appeals the trial court's decision granting Ms. Rhodes's motion to amend Judgment Summary I to remove Mr. Roberts as a joint debtor.

We begin with the trial court's order granting the motion to amend Judgment Summary I to remove Mr. Roberts as a joint debtor and imposing on Mr. Roberts the fees incurred by Mr. Barnett in responding to the motion.

III.    THE TRIAL COURT DID NOT ERR OR ABUSE ITS DISCRETION IN REMOVING MR. ROBERTS AS A JOINT DEBTOR IN JUDGMENT SUMMARY I BUT MIGHT HAVE ABUSED ITS DISCRETION IN IMPOSING FEES

The discovery master's January 12, 2018 report and recommendation said the following about attorney fees and costs:

> The Discovery Master recommends that further fees be imposed *against Plaintiff* and awarded to the Defendants for the continued necessity of their pursuit of answers to their 2015 first set of interrogatories.

CP at 1155 (emphasis added).  There was no recommendation to impose CR 11 sanctions on Mr. Roberts.

On January 18, 2018, Mr. Barnett filed a "Motion to Adopt Discovery Master Recommendations, Dismiss Claims, Award Defendants' Fees and Costs, and Assess Discovery Master Fees."  CP at 825.  The motion did not ask for CR 11 sanctions against Mr. Roberts.

After Ms. Rhodes filed a motion challenging the discovery master's report and recommendation on January 23, 2018, Mr. Barnett filed "Defendant's Response to Plaintiff's Motion Challenging Special Master's Recommendation."  CP at 869.  The

31

caption did not identify the submission as including a motion for CR 11 sanctions. Nonetheless, in the body of the response, Mr. Barnett asked the court to impose CR 11 sanctions on Mr. Roberts, asserting that Ms. Rhodes had abandoned her claims and Mr. Roberts's "[c]ontinued litigation . . . after his client has abandoned the claims is litigation interposed for an improper purpose." CP at 872. Mr. Barnett was aware, and even pointed out in his response, that under the stipulation and order appointing the discovery master, Ms. Rhodes was not entitled to reply to his response nor have oral argument without leave of court.

Notes for hearing were served and filed that set Mr. Barnett's motion to adopt the discovery master's recommendation and Ms. Rhodes's challenge to the recommendation for hearing at the same time on February 9, 2018. The record on appeal contains no note for hearing of a motion under CR 11. Mr. Barnett's proposed order addressing the matters noted for hearing bears the footer, "Order Adopting Discovery Master's Recommendations." CP at 1022. It was captioned "Order Adopting Discovery Master's Recommendations, Dismissing Plaintiff's Claims and Awarding Fees." *Id.* The trial court signed Mr. Barnett's proposed order.

In moving for relief from the order under CR 60, Mr. Roberts admitted he misread Mr. Barnett's proposed order and did not realize it imposed fees against him as a CR 11 sanction. In granting his request for relief, the trial court found "good cause to amend the judgment and find that only the Plaintiff's name, Sara Rhodes, shall be listed as the

32

judgment debtor." CP at 1259. Given Mr. Roberts's failure to review the proposed orders and judgments prior to their entry, however, it also found good cause to impose costs on Mr. Roberts for Mr. Barnett's expense incurred in responding.

With the adoption of the civil rules, a court's inherent power to modify a judgment to make it conform to the judgment actually rendered was embodied in CR 60. Philip A. Trautman, *Vacation and Correction of Judgments in Washington*, 35 WASH. L. REV. 505-06 (1960). CR 60(a) provides that "[c]lerical mistakes in judgments . . . and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party." The test for distinguishing between "clerical" error, which can be corrected, and "judicial" error, which cannot, is whether, based on the record, the judgment embodies the trial court's intention. *In re Marriage of Getz*, 57 Wn. App. 602, 604, 789 P.2d 331 (1990). Clerical error can include verbiage in an order that was intentionally entered by the court if the record supports the trial court's position that inclusion of the challenged verbiage was never its intention. *In re Estate of Kramer*, 49 Wn.2d 829, 830, 307 P.2d 274 (1957).

A trial court's decision whether to vacate a judgment or order under CR 60 is reviewed for abuse of discretion. *Shaw v. City of Des Moines*, 109 Wn. App. 896, 900, 37 P.3d 1255 (2002). In considering whether to grant a motion to vacate under CR 60, a trial court should exercise its authority liberally and equitably to preserve the parties' substantial rights. *Id.* at 901.

The trial court's position that the language imposing CR 11 sanctions was not relief it intended is supported by the record. CR 11(a) provides that sanctions can be imposed upon "motion" by a party. Two motions were before the court for decision on February 9, and neither was, or included, a motion under CR 11. Mr. Barnett included his request for CR 11 sanctions in the body of a response to which Ms. Rhodes was not permitted to reply or be heard in oral argument. A court imposing CR 11 sanctions must make explicit findings as to which pleadings violated CR 11, how they constituted a violation, and what conduct was sanctionable. *N. Coast Elec. Co. v. Selig*, 136 Wn. App. 636, 649, 151 P.3d 211 (2007). The trial court did not make the required findings here.

Mr. Barnett argued below and argues on appeal that Mr. Roberts was disqualified from bringing the motion to correct the judgments, relying on a distinguishable decision, *In re Marriage of Wixom*, 182 Wn. App. 881, 899, 332 P.3d 1063 (2014). This court held in *Wixom* that "[i]f attorney and client disagree about who is at fault and point their fingers at each other in response to a request for sanctions, the interests of the two are clearly adverse," and the client will need new counsel to represent her against her former counsel in the proceedings to determine fault. *Id.* at 901. We cautioned that a conflict does not exist every time the opposing party targets a sanction motion against attorney and client, lest sanction motions be used as a tactic to harass. *Id.* We held only that "if and when an attorney seeks to limit a sanction award against only his or her client, the attorney must withdraw from representing the client." *Id.*

34

Mr. Roberts was not pointing a finger at Ms. Rhodes, suggesting she was at fault. His contention was that the trial court had not intended to impose CR 11 sanctions against *anyone*. It was implicit in his motion that if the trial court intended to impose sanctions, then the sanctions would be against him.

The trial court did not abuse its discretion in granting relief under CR 60.

We question whether the trial court had grounds to order Mr. Roberts to pay Mr. Barnett's fees incurred in responding to the motion, however. In *State v. Gassman*, 175 Wn.2d 208, 211, 283 P.3d 1113 (2012), our Supreme Court set boundaries on the authority of Washington trial courts to impose sanctions, including attorney fees, when exercising their inherent authority to control and manage their calendars, proceedings, and parties. *Gassman* involved an appeal from a criminal prosecution in which the State charged several defendants with crimes alleged to have taken place "on or about" one date, and then moved on the morning of trial to charge them as having been committed "on or about" a later date. Defense counsel objected, arguing their defenses relied on alibis for the date originally charged. The court allowed amendment of the information, continued trial, and—calling the State's conduct "careless"—awarded $2,000 to each defense lawyer as attorney fees for extra time required to deal with the alibi defense. *Id*. at 210.

The Supreme Court reversed the fee awards. It observed that Washington courts have followed federal case law in holding that a sanction of attorney fees imposed under

35

the court's inherent authority must be based on a finding of conduct that is "at least '"tantamount to bad faith."'" *Id.* at 211 (quoting *State v. S.H.*, 102 Wn. App. 468, 474, 8 P.3d 1058 (2000) (quoting, in turn, *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980))). "Under federal case law, courts may assess attorney fees as an exercise of inherent authority only where a party engages in willfully abusive, vexatious, or intransigent tactics designed to stall or harass." *Id.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-47, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)). It has been suggested that the reason federal courts limit fee shifting as a sanction to bad faith conduct is "as a means of preventing erosion or evasion of the American Rule." *Chambers v. NASCO, Inc.*, 501 U.S. at 59 (Scalia, J., dissenting).

*Gassman* holds that when a sanction is imposed under the court's inherent powers, we may uphold it absent express findings if an examination of the record establishes that the court found conduct equivalent to bad faith. We are unable to conclude that the trial court found bad faith here. It appears possible, if not likely, that the trial court found carelessness or recklessness on Mr. Roberts's part. We therefore reverse the award of fees to Mr. Barnett and remand with leave to the trial court to reimpose the fees only if it makes a finding of conduct tantamount to bad faith.

IV.     THE REMAINING FEE AND COST AWARDS ARE REVERSED INCIDENT TO OUR
        REVERSAL OF THE UNDERLYING ORDERS ON THE MERITS

We reverse the remaining orders awarding fees and costs incident to our reversal

of the December 18, 2017 and February 9, 2018 orders on their merits.  The trial court is

not foreclosed from taking into consideration prior fees and costs incurred in connection

with the parties' discovery disputes in making any awards of fees and costs hereafter.

We reverse in whole or in part the following orders:

| | |
|---|---|
| Order on Discovery Master's Report and Recommendations re: Defendant's Motion to Compel, Plaintiff's Request for Protective Order, and Defendant's Supplemental Motion for an Order of Default and Fees entered December 18, 2017 | Reverse |
| Order Adopting Discovery Master's Recommendations, Dismissing Plaintiff's Claims and Awarding Fees dated February 9, 2018, and entered February 15, 2018 | Reverse |
| Order on Supplemental Fees and Fee Bill and Discovery Master Fees entered February 28, 2018 | Reverse |
| Order Re: Opinion on Reconsideration on Motion to Amend Judgment entered February 28, 2018, dated September 4, 2018 | Reverse in part |
| Amended Judgment and Order on Supplemental Fees and Fee Bill and Discovery Master Fees dated September 4, 2018 | Reverse |
| Order Re: Opinion on Reconsideration on Motion to Amend Judgment entered on February 28, 2018, dated September 7, 2018 | Reverse in part |
| Amended Judgment and Order on Supplemental Fees and Fee Bill and Discovery Master Fees dated September 7, 2018 | Reverse |
| Order Re: Opinion on Reconsideration on Motion to Amend Judgment entered February 28, 2018, dated September 4, 2018 | Reverse in part |

No. 35920-4-III (consol w/ No. 36227-2-III)
*Rhodes v. Barnett & Assocs.*

We otherwise affirm the orders appealed. We direct the trial court to take any action required to vacate the order and judgment entered on February 9, 2018, as described in footnote 7. We remand for further proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Korsmo, J.

Pennell, C.J. (result only)